[Cite as *Roush v. Roush*, 2017-Ohio-840.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Allison C. Roush, | : | |
| Plaintiff-Appellee, | : | Nos. 15AP-1071, 16AP-264, and 16AP-388 |
| v. | : | (C.P.C. No. 13DR-1497) |
| William F. Roush, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 9, 2017

**On brief:** *McKinlay Law Offices, LLC, Amy M. McKinlay*, and *Kerry Hageman-Froelich*, for appellee. **Argued:** *Amy M. McKinlay*.

**On brief:** *The Tyack Law Firm Co., LPA*, and *Thomas M. Tyack*, for appellee. **Argued:** *Thomas M. Tyack*.

APPEALS from the Franklin County Court of Common Pleas, Division of Domestic Relations

DORRIAN, J.

{¶ 1} Defendant-appellant, William F. Roush, appeals from judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations, denying his motion for new trial, finding him in contempt of court, and awarding attorney fees to plaintiff-appellee, Allison C. Roush, related to the contempt proceedings. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} The parties were married in 1996 and had two children. In March 2013, appellee asked appellant for a dissolution of the marriage. Shortly thereafter, appellee transferred one-half of the balance in the parties' joint checking account to her personal account; appellant subsequently transferred the remaining balance of the joint account to

his personal account. In April 2013, appellee was involuntarily detained under the custody of the Franklin County ADAMH Board at Netcare for two days, pursuant to an order of detention issued by the Franklin County Court of Common Pleas, Probate Division, based on assertions that appellee suffered from depression and had expressed suicidal thoughts. On April 23, 2013, appellee filed a complaint for divorce.

{¶ 3} The trial court entered a judgment granting the divorce on May 21, 2015. The divorce decree ordered appellee to submit a shared parenting plan incorporating the joint shared parenting plan previously filed with the court. The decree also provided for child support and spousal support to be paid by appellant. The decree identified the parties' separate property and provided for division of the marital property. Among the provisions governing the division of property, the decree ordered appellant to transfer one-half of the balance of his Chase Roth individual retirement account and $374,404 from his Chase retirement savings plan to appellee. The decree provided that a qualified domestic relations order was to be prepared to facilitate the transfer of the retirement savings account funds. The decree also ordered appellant to pay appellee $15,000 toward her attorney fees.

{¶ 4} Appellant filed a motion for new trial on June 15, 2015, arguing that the judgment issuing the divorce decree was against the weight of the evidence and contrary to law. Appellee filed a motion for contempt on July 29, 2015, alleging that appellant failed to comply with specific provisions of the divorce decree. On September 1, 2015, the trial court issued a nunc pro tunc amended divorce decree, which corrected a provision relating to appellant's child support obligation if health insurance was not provided. The trial court issued a judgment entry denying appellant's motion for new trial on October 28, 2015. Appellant then filed a notice of appeal to this court of the judgment entry denying the motion for new trial on November 24, 2015, which was assigned case No. 15AP-1071. On December 7, 2015, appellant filed a motion to stay the judgment entry granting the divorce decree. The trial court denied the motion to stay on February 18, 2016, immediately prior to a hearing on the motion for contempt. Following that hearing, on March 9, 2016, the trial court issued a judgment finding appellant in contempt for failing to comply with various provisions of the divorce decree. On April 7, 2016, appellant filed a notice of appeal, assigned case No. 16AP-264, of the judgment entry

granting appellee's motion for contempt.  Subsequently, on April 22, 2016, the trial court issued a judgment ordering appellant to pay an additional $5,000 to appellee toward her attorney fees related to the contempt proceeding.  On May 19, 2016, appellant filed a notice of appeal, assigned case No. 16AP-388, of the trial court's judgment granting appellee's motion for attorney fees from the contempt proceeding.

## II.  Assignments of Error

{¶ 5}    Appellant appeals from the trial court judgment denying his motion for new trial, assigning seven errors in case No. 15AP-1071 for this court's review:

> I. The Trial Court erred in overruling the Motion for New Trial and failing to discuss or review the issues raised on the Motion for New Trial.
>
> II. In the Motion for New Trial, with the appropriate citation, were the following:
>
> a. Issues surrounding an allegation that the Defendant caused the Plaintiff to be hospitalized for mental health reasons when the reality was the Probate Court issued an Order causing the Plaintiff to be taken to a mental health facility for evaluation.
>
> b. The parties had agreed that equal division of certain extraordinary expenses for the children, which was journalized and filed, the Trial Court entered an interim decision ordering the Defendant to pay 2/3 and the Plaintiff 1/3. While this issue may have been moot because the Court subsequently filed a "nunc pro tunc Judgment Entry Decree of Divorce where that issue appears to have been adjusted."
>
> III. The Trial Court erred in incorrectly doubling child support where there was no insurance contrary to the statutes.
>
> IV. The Trial Court erred in refusing to recognize that two joint accounts in the name of Plaintiff and one of her children were part of the marital assets, not education accounts for the children. Other accounts which were recognized as joint educational accounts were described.
>
> V. The Trial Court erred when it found that the Plaintiff had paid and used non-marital assets to contribute toward the initial purchase of the real estate owned by the parties has [sic] a non-martial [sic] interest when the only documentation was a check on the account from the bank where the parties had their account. No evidence was presented to demonstrate

that check came from funds that weren't in existence prior to the parties' marriage other than the Plaintiff simply saying it was.

VI. The Trial Court erred in finding that money that was paid to the Plaintiff suggesting that the Defendant received only a very limited compensation for damage to the parties [sic] real estate when in reality another check for several thousand dollars showing the date of loss and the amount deposited came from the summer the wind damage that happened the previous summer, said funds having been placed in the joint account from which the Plaintiff then removed forty-eight thousand dollars.

VII. The Trial Court erred in findings with regard to attorney fees then proceeding then to assess an additional $15,000.00 in attorney fees against the Defendant in favor of the Plaintiff.

{¶ 6} Appellant also appeals in case Nos. 16AP-264 and 16AP-388 from the trial court judgments finding him in contempt of court and awarding appellee attorney fees related to the contempt proceeding, assigning four errors for this court's review, which this court shall refer to as assignments of error eight through eleven:

[VIII.] The Trial Court erred by orally ruling at the time of the hearing on post-decree Motions filed by the Plaintiff orally denying the stay requested in December of 2015, in February of 2016.

[IX.] The Trial Court erred in refusing to consider as requested by the Defendants [sic] certain documents and exhibits, which were in evidence from the trial, which were relevant to the issues being raised on the contempt.

[X.] The Trial Court erred in finding that the Defendant was guilty of contempt because paperwork ordered to be prepared by another agency incident to an order for transfer of retirement benefits had not been completed.

[XI.] The Trial Court erred in ordering the Defendant to pay an additional $5,000.00 in Attorney Fees to Plaintiff.

## III. Discussion

{¶ 7} In his first assignment of error and the first portion of his second assignment of error, appellant asserts the trial court erred by denying his motion for new

trial. Appellant claims the trial court failed to discuss or review the issues raised in the motion for new trial.

{¶ 8} Civ.R. 59(A) enumerates nine specific grounds on which a new trial may be granted; the rule further provides that a court has discretion to grant a new trial for good cause shown. Appellant's motion for new trial appears to have been based on claims that the judgment was not sustained by the weight of the evidence and was contrary to law. *See* Civ.R. 59(A)(6) and (7). "When presented with a Civ.R. 59(A)(6) motion, a trial court weighs the evidence and considers the credibility of the witnesses to determine whether the manifest weight of the evidence supports the judgment." *Alderman v. Alderman*, 10th Dist. No. 10AP-1037, 2011-Ohio-3928, ¶ 12. We review a trial court's ruling on a Civ.R. 59(A)(6) motion for abuse of discretion. *Id.* at ¶ 13. An abuse of discretion occurs when a court's judgment is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). By contrast, a trial court's ruling on a claim that a new trial is warranted because the judgment is contrary to law under Civ.R. 59(A)(7) presents questions of law, which are reviewed de novo. *Harper v. Lefkowitz*, 10th Dist. No. 09AP-1090, 2010-Ohio-6527, ¶ 6.

{¶ 9} In his motion for new trial, appellant raised the same general claims asserted in the present appeal. The trial court denied the motion with a brief entry stating that it had reviewed the evidence, the credibility of the witnesses, and the applicable law, and found that appellant's request for a new trial was without merit. Appellant argues on appeal that the trial court erred because it failed to discuss or review the issues raised in the motion. Specifically, appellant cites his assertion that the divorce decree did not accurately characterize the events leading to appellee's institutionalization and mental health evaluation. The trial court stated in the divorce decree that appellant was responsible for having appellee involuntarily institutionalized in April 2013. Appellant appears to argue that this conclusion was not supported by the weight of the evidence, citing the order of detention entered by the probate court, providing for appellee to be detained at Netcare. The order of detention was supported by an affidavit filed by a Netcare social worker. Appellant argues this demonstrates that he was not responsible for appellee's institutionalization under the authority of the probate court.

{¶ 10} The content of the affidavit, however, supports the trial court's conclusion that appellant was responsible for initiating the process that led to appellee's institutionalization. The social worker stated in the affidavit that appellant called Netcare and reported that appellee threatened to commit suicide, that she had been showing rage in front of the parties' children, and that she had been a restless sleeper. The social worker relied on these statements to support her assertion that appellee presented a substantial risk of self-harm. While appellant may not have personally filed the documents in the probate court leading to appellee's institutionalization, the evidence suggests that appellant was involved in initiating the process that led to the filing of those documents. Under these circumstances, we cannot conclude that the trial court abused its discretion by denying the motion for new trial on grounds that the judgment was not supported by the weight of the evidence.

{¶ 11} Accordingly, we overrule appellant's first assignment of error and the first portion of appellant's second assignment of error.

{¶ 12} In the second portion of his second assignment of error, appellant appears to claim that the trial court erred by ordering him to pay two-thirds of certain extraordinary expenses for the children. In his brief, appellant argues the parties agreed to an equal division of school expenses, school supplies, and extracurricular activity expenses, and the trial court erred by ordering appellant to pay two-thirds of those expenses. On August 26, 2015, prior to entry of the divorce decree, appellee submitted a shared parenting plan providing, in relevant part, that the children's school expenses and extracurricular activity expenses would be divided equally between the parties. On September 15, 2015, following entry of the divorce decree, the trial court adopted appellee's shared parenting plan. Thus, to the extent appellant argues the divorce decree is inconsistent with the agreement of the parties, it appears this argument is rendered moot by the trial court's adoption of appellee's shared parenting plan, which provides for an equal division of these expenses.

{¶ 13} Accordingly, we overrule the second portion of appellant's second assignment of error.

{¶ 14} Appellant's third assignment of error asserts the trial court erred by effectively doubling appellant's child support obligation when health insurance was not

provided. In the original divorce decree, the trial court ordered appellant to pay child support in the amount of $1,305.00 per month if health insurance was provided, or $1,268.43 per month, per child, and $201.92 in cash medical support if health insurance was not provided. In the nunc pro tunc judgment entry, the trial court deleted the "per child" provision, requiring appellant to pay child support in the amount of $1,305.00 per month if health insurance was provided, or $1,268.43 per month and $201.92 in cash medical support if health insurance was not provided.

{¶ 15} Accordingly, we need not rule on appellant's third assignment of error because it was rendered moot by the trial court's nunc pro tunc entry, as appellant acknowledged at oral argument.

{¶ 16} Appellant's third assignment of error is rendered moot.

{¶ 17} Appellant's fourth, fifth, and sixth assignments of error assert the trial court erred with respect to its findings regarding various assets. Because these three assignments of error address the trial court's findings regarding the division of assets, we will consider them together.

{¶ 18} A domestic relations court has broad discretion to make divisions of property in a divorce action. *Zeidman v. Zeidman*, 10th Dist. No. 15AP-783, 2016-Ohio-4767, ¶ 13. "In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. [U]pon making such a determination, the court shall divide the marital and separate property equitably between the spouses." R.C. 3105.171(B). We review a trial court's determination of property as marital or separate under a manifest weight standard, and we will affirm a trial court's determination if it is supported by some competent, credible evidence. *Banchefsky v. Banchefsky*, 10th Dist. No. 09AP-1011, 2010-Ohio-4267, ¶ 36. *See also Wolf-Sabatino v. Sabatino*, 10th Dist. No. 10AP-1161, 2011-Ohio-6819, ¶ 12 ("An appellate court's job is not to reweigh the evidence but to determine whether competent, credible evidence in the record supports the trial court's findings."). A trial court's valuation and division of property is subject to review for abuse of discretion. *Banchefsky* at ¶ 36.

{¶ 19} In his fourth assignment of error, appellant argues the trial court erred by concluding that two Chase savings accounts were custodial accounts held on behalf of the parties' two children. Appellant asserts these savings accounts should have been

designated as marital assets and allocated accordingly in the division of marital assets. Appellant claims that appellee removed $4,000 from a joint checking account held by the parties and deposited $2,000 into each of the Chase savings accounts at the time appellee filed for divorce. Appellant further argues that each of the children also had an education account, which earned significantly higher interest than the Chase savings accounts. Appellant claims that the existence of these higher-interest education accounts supports his claim that the Chase savings accounts were marital assets, not accounts held for the children's benefit.

{¶ 20} The trial court found the Chase savings accounts were assets of the parties' children. The court noted that each child had an education account and that the parties opened and began contributing to the Chase savings accounts during a period when the children's education accounts were losing money due to economic conditions. The court also acknowledged appellee's withdrawal of funds from the parties' joint account and deposits into the children's Chase savings accounts in March 2013, but noted that appellee testified she did not typically discuss these types of transfers with appellant. The court ordered that appellee retain the position of custodian of the children's education accounts and the Chase savings accounts. The court further ordered appellee to transfer the funds contained in each of the Chase savings accounts to each child's respective education account.

{¶ 21} Although appellant argues that the existence of the higher-interest education accounts for each child belies appellee's claim that the savings accounts were intended for the children's education, the record contains competent, credible evidence to support the trial court's conclusion. Appellee testified that the parties typically transferred money into each child's account each year. She further testified that when the stock market was losing money, the money was placed into the Chase savings accounts to avoid losses in the education accounts. On cross-examination, appellee testified that no money had been transferred from the Chase savings accounts into the children's education accounts during the pendency of the divorce proceeding because of temporary orders issued by the court. Appellant did not provide any contrary evidence or testimony regarding the parties' practices with respect to the children's accounts. The divorce decree indicates the trial court found appellee's testimony with respect to the children's savings

accounts to be credible. "[I]t is well-established that a trial court, particularly a domestic relations court, is in the best position to resolve disputes of fact, and assess the 'credibility of witnesses' and the weight to be given to their testimony." *Bates v. Bates*, 10th Dist. No. 04AP-137, 2005-Ohio-3374, ¶ 38. There was competent, credible evidence to support the trial court's conclusion that the Chase savings accounts were not marital assets and, therefore, this conclusion is not against the manifest weight of the evidence.

{¶ 22} Accordingly, we overrule appellant's fourth assignment of error.

{¶ 23} Appellant argues in his fifth assignment of error that the trial court erred by concluding that the bulk of the down payment for the parties' marital residence was paid for with appellee's separate property. The trial court concluded that the parties made a down payment of $24,301 on the marital residence, and that $21,785 of that down payment was comprised of appellee's separate property. Appellant claims there was no evidence presented to support appellee's claim that this portion of the down payment was made from an inheritance received from her grandmother.

{¶ 24} The trial court noted in the divorce decree that appellee presented copies of two checks written in her maiden name to Trinity Homes and Preferred Title, respectively. The check to Trinity Homes, in the amount of $4,050.00, was written on October 23, 1996, prior to the marriage. The check to Preferred Title, in the amount of $18,535.47, was issued on June 5, 1997, approximately six months after the parties were married. The trial court also cited appellee's testimony that she received these funds as an inheritance from her grandmother. Further, the trial court noted appellee's claim that the home was purchased approximately six months after each of them graduated from Ohio University and that it was unlikely they would have saved $20,000 during their brief careers. The court concluded that this constituted competent, credible evidence to establish by a preponderance of the evidence that appellee had a separate, pre-marital interest in the property.

{¶ 25} Appellee testified that both she and appellant contributed funds toward the purchase of the home. Appellee testified that appellant contributed $800 toward the down payment, identifying a check written by appellant's parents. Appellee also identified the two checks cited in the divorce decree, asserting that the check to Preferred Title was written when she closed a personal savings account containing funds that she

inherited from her grandmother. She testified that appellant did not contribute to the amounts contained in the checks to Trinity Homes and Preferred Title. Appellee testified that she did not believe either of the parties would have been able to save $20,000 during the span of six months in 1996, based on their employment and income at the time. Appellant did not offer any contrary evidence or testimony regarding the sources for the down payment on the marital residence.

{¶ 26} On appeal, appellant notes that the check to Preferred Title was a cashier's check from Bank One, which he asserts was the predecessor institution to JPMorgan Chase, where the parties had their shared checking account. Appellant asserts that appellee failed to provide any documentation to corroborate her claim that she received an inheritance from her grandmother. However, appellant did not offer any testimony evidence or testimony to establish that the down payment was made from marital assets. In effect, appellant asks this court to reweigh the evidence presented, which is beyond our purview. *See Wolf-Sabatino* at ¶ 12. As noted above, the trial court was in the best position to evaluate the credibility of the witnesses. The trial court clearly found appellee's testimony to be credible. We conclude that appellee's testimony and documentary evidence constitutes competent, credible evidence to support the trial court's conclusion regarding appellee's separate interest in the marital residence.

{¶ 27} Accordingly, we overrule appellant's fifth assignment of error.

{¶ 28} Appellant's sixth assignment of error asserts the trial court erred in its findings with respect to insurance claims for damage to the marital residence that occurred in 2012, and the corresponding value of the marital residence. In the divorce decree, the trial court stated that the residence was damaged by a windstorm in summer 2012, and further damaged by a leak in autumn 2012. The court found that appellant made claims on the parties' homeowners insurance related to both of these incidents. The court stated that appellant received a payment of $1,323.07 for the claim on the damage that occurred in summer and another payment of $7,008.41 for the claim on the damage that occurred in autumn. The court concluded that appellee effectively received one-half of these insurance proceeds because the payments had been deposited into the parties' joint checking account and appellee subsequently transferred one-half of the balance in that account to her personal account. The trial court found that appellant and a neighbor

repaired the damage in both instances. The court rejected appellant's claim that the repairs completed with the neighbor were temporary and that appellee needed to return one-half of the insurance proceeds so that adequate repairs could be made, concluding that appellant's testimony was not credible in light of the parties' history of hiring their neighbor to perform home repairs.

{¶ 29} Appellant argues that the claim numbers on each of the insurance checks introduced into evidence are identical, and that this establishes that all of the insurance proceeds were compensation for the wind damage that occurred in summer 2012. Appellant claims that the intention was to use these proceeds to undertake more extensive repairs the following spring. In effect, appellant appears to argue that the trial court should have ordered appellee to return one-half of the insurance proceeds or should have discounted the value of the marital residence to adjust for the damage.

{¶ 30} Assuming, without deciding, that the trial court incorrectly attributed the insurance payment of $7,008.41 to the autumn incident when it was issued for the summer incident, this does not change the court's ultimate conclusion rejecting appellant's argument that further repairs were necessary. Appellee testified that appellant and the neighbor repaired the damage that occurred in summer 2012. Appellee also testified that the neighbor repaired the leak damage that occurred in autumn 2012. She further testified that the neighbor had previously performed other home improvement tasks for the parties. Appellee stated that appellant did not express any concern about the condition of the residence or need for further repairs, and she believed he was satisfied with the work the neighbor performed. By contrast, appellant testified that all of the insurance payments were for repairs to the damage that occurred in spring 2012. He testified that the work performed with the neighbor was merely emergency repairs to the siding, and that there was a plan to undertake a full repair in spring 2013. After considering this evidence, the trial court concluded that appellant's testimony was not credible. The trial court effectively concluded that the neither the value of the marital residence nor the balance of the joint checking account needed to be adjusted to account for further repairs to the residence. The court's valuation and division of marital property is subject to abuse of discretion review. *Banchefsky* at ¶ 36. Here, the trial court explained the basis for its conclusion, and we cannot find that the court's conclusion was

unreasonable, arbitrary or unconscionable and, therefore, it does not constitute an abuse of discretion.

{¶ 31} Accordingly, we overrule appellant's sixth assignment of error.

{¶ 32} In his seventh assignment of error, appellant argues the trial court erred by ordering him in the divorce decree to pay appellee $15,000 toward her attorney fees. Pursuant to R.C. 3105.73(A), in a divorce action, a trial court may award "all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable.  In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate."  We review an award of attorney fees under R.C. 3105.73(A) for abuse of discretion.  *McCall v. Kranz*, 10th Dist. No. 15AP-436, 2016-Ohio-214, ¶ 27.

{¶ 33} Appellant raises two arguments in support of his claim that the trial court erred by ordering him to pay appellee's attorney fees under the divorce decree.  First, appellant argues the trial court erred by finding that he attempted to have appellee removed from the marital residence by the Grove City Police Department.  Similar to the arguments raised in support of his first assignment of error, appellant asserts that appellee was removed from the marital residence and hospitalized at Netcare as a result of the probate court action initiated by a Netcare social worker, not by appellant.  As explained above, in our discussion of the first assignment of error, although appellant may not have personally filed the probate court action resulting in appellee's institutionalization, the evidence suggests that appellant was involved in initiating the process that led to the filing of that action.  Therefore, the trial court did not abuse its discretion in considering this as one factor in determining whether an award of attorney fees would be equitable.

{¶ 34} Second, appellant argues the trial court misstated his legal expenses when granting appellee's request for attorney fees.  Appellant was represented by two different attorneys during the course of the divorce proceedings.  The trial court stated in the divorce decree that appellant had paid his first attorney, Luther Mills, a $15,000.00 flat fee, and had paid his subsequent attorney an additional $22,237.50, resulting in total attorney fees of $37,237.50.  The court noted that, prior to the start of the trial, appellee

had accrued attorney fees and expense of $64,801.88. Contrary to the trial court's findings, appellee's trial exhibit 41 appears to show approximately $35,000.00 in total payments from appellant to Mills, including a single payment of $15,000.00. Appellant testified that Mills had billed him approximately $44,000.00, and that he had paid Mills approximately $40,000.00. Appellant also testified that his understanding was that the litigation phase of the case would be covered by a flat-fee payment of $15,000.00 to Mills. Appellant further testified, however, that his current counsel was pursuing an action against Mills's estate to recover excess fees appellant paid. It was unclear from appellant's testimony how much he sought to recover from Mills's estate in alleged overpayments. Thus, it appears the trial court may have been off with respect to the amount appellant paid to his prior counsel and the discrepancy between the parties' respective legal fees.

{¶ 35} Although the trial court's determination of the amount of discrepancy between the parties' attorney fees may have been off, that was not the only factor the trial court relied on in awarding attorney fees to appellee. Pursuant to R.C. 3105.73(A), the court may consider the parties' assets and income, the parties' conduct, and any other relevant factors the court deems appropriate. *See Hamad v. Hamad*, 10th Dist. No. 06AP-516, 2007-Ohio-2239, ¶ 76 (holding that trial court does not abuse its discretion if it considers the parties' abilities to pay attorney fees in making an award under R.C. 3105.73(A)). "Because a court addresses an award of attorney fees through equitable considerations, a trial court properly can consider the entire spectrum of a party's actions, so long as those actions impinge upon the course of the litigation." *Padgett v. Padgett*, 10th Dist. No. 08AP-269, 2008-Ohio-6815, ¶ 17. In ordering appellant to pay a portion of appellee's attorney fees, the trial court noted that appellee had incurred significant debt and borrowed from her parents to cover her legal costs, while appellant maintained a substantial balance in his personal bank accounts. The court further noted that appellant engaged in multiple violations of court orders. Under these circumstances, because the trial court relied on multiple factors in determining that an award of attorney fees in favor of appellee would be equitable, we cannot conclude that the trial court abused its discretion despite its apparently erroneous finding regarding the relative discrepancy between the parties' attorney fees.

{¶ 36} Accordingly, we overrule appellant's seventh assignment of error.

{¶ 37} Next, we turn to appellant's eighth through eleventh assignments of error, which relate to the contempt judgment and award of additional attorney fees.

{¶ 38} In his eighth assignment of error, appellant asserts the trial court erred by delaying its ruling on his motion for a stay of execution of the divorce decree while his appeal from the denial of the motion for new trial was pending, and then by orally denying the motion for stay at the contempt hearing. Appellant claims that the trial court's delay prevented him from pursuing an order staying execution of the divorce decree from this court. Generally, denial of a motion to stay is reviewed for abuse of discretion. *See Stubbs v. Dept. of Rehab. & Corr.*, 10th Dist. No. 11AP-484, 2012-Ohio-1374, ¶ 6. Appellant does not appear to argue that the trial court erred by denying his motion to stay; rather, his arguments focus on the fact that the trial court did not rule on his motion to stay until the contempt hearing.

{¶ 39} As noted above, the original divorce decree was entered on May 21, 2015, and appellant filed his motion for new trial on June 15, 2015. The trial court issued the nunc pro tunc amended divorce decree on September 1, 2015, and the judgment entry denying appellant's motion for new trial on October 28, 2015. Appellant then filed his notice of appeal of the denial of his motion for new trial to this court on November 24, 2015. Appellant filed a motion to stay on December 7, 2015, which the trial court denied on February 18, 2016, immediately prior to a hearing on the motion for contempt.

{¶ 40} Appellant appears to argue that the trial court's delay in ruling on his motion for stay prevented him from seeking a stay of the divorce decree from this court. App.R. 7(A) provides, in relevant part, that:

> Application for a stay of the judgment or order of a trial court pending appeal * * * must *ordinarily* be made in the first instance in the trial court. A motion for such relief * * * *may* be made to the court of appeals or to a judge thereof, but, except in cases of injunction pending appeal, the motion shall show that application to the trial court for the relief sought is not practicable, or that the trial court has, by journal entry, denied an application or *failed to afford the relief which the applicant requested.*

(Emphasis added.) Thus, while the ordinary procedure involves applying for a stay of a judgment in the trial court, the plain language of App.R. 7(A) suggests that appellant could have applied to this court for a stay prior to the trial court's February ruling, on the

basis that the trial court had failed to afford the requested relief. Moreover, we note that after the trial court denied appellant's motion for stay, appellant filed a motion to stay in this court, which we denied. Further, we note that appellant has appealed from the trial court's contempt rulings, which are part of this consolidated appeal. Under these circumstances, we cannot conclude that the trial court abused its discretion by denying the motion to stay, or that appellant was prejudiced by the timing of the trial court's ruling.

{¶ 41} Accordingly, we overrule appellant's eighth assignment of error.

{¶ 42} Appellant argues in his ninth assignment of error that the trial court erred by refusing to consider certain exhibits that were admitted at trial in the contempt hearing. Appellant specifically sought to direct the court's attention to exhibits that were introduced at trial regarding appellee's attorney fees and financial accounts. Appellee objected to this evidence, asserting that the issue of appellee's attorney fees or her ability to pay them was not at issue in the contempt hearing. The trial court sustained appellee's objection.

{¶ 43} Generally, the admission or exclusion of evidence lies within the broad discretion of the trial court. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62. The issue before the court at the contempt hearing was appellant's failure to comply with various provisions of the divorce decree. Appellant has failed to demonstrate how the exhibits he sought to refer to at the contempt hearing were relevant to this underlying issue. We cannot conclude that the trial court abused its discretion by sustaining appellee's objection and declining to consider this evidence, despite the fact that it was previously admitted into evidence at trial.

{¶ 44} Accordingly, we overrule appellant's ninth assignment of error.

{¶ 45} In his tenth assignment of error, appellant asserts the trial court erred by finding him guilty of contempt for failure to transfer funds from his retirement accounts to appellee. Appellant asserts that it was necessary to have a qualified domestic relations order prepared to transfer his retirement benefits and that the entity required to prepare that document had not provided any information to him. Therefore, appellant argues, he should not have been held in contempt for failure to comply with that portion of the divorce decree.

{¶ 46} "Contempt results when a party before a court disregards or disobeys an order or command of judicial authority." *Byron v. Byron*, 10th Dist. No. 03AP-819, 2004-Ohio-2143, ¶ 11. "A finding of contempt requires three findings: an order of the court, knowledge of the order by the alleged contemnor, and a failure to comply with the prior court order." *In re P.P.*, 10th Dist. No. 13AP-140, 2013-Ohio-4988, ¶ 19. The burden of proof for civil contempt is clear and convincing evidence. *Byron* at ¶ 12. Generally, impossibility of performance is a valid defense against a contempt charge, but it is not a valid defense where the contemnor created the impossibility by his own actions. *P.P.* at ¶ 21. A defendant must prove impossibility of performance by a preponderance of the evidence. *Id.* We review a finding of contempt for abuse of discretion. *Byron* at ¶ 15.

{¶ 47} Appellant testified at the contempt hearing that he had not been given any information about an individual retirement account in appellee's name to which the retirement benefits could be transferred. He further testified he had not received any information from the company designated in the divorce decree to prepare the qualified domestic relations order. Appellant testified he believed he could incur a tax penalty if the qualified domestic relations order was not properly prepared. On cross-examination, however, appellant admitted that the balance sheet attached as an exhibit to the divorce decree indicated that appellee had an individual retirement account in her name. Appellant further admitted that neither he nor his attorney had contacted the company designated to prepare the qualified domestic relations order about the transfer of his retirement benefits to appellee, stating "No. I mean, I don't even know who they are." (Feb. 18, 2016 Tr. at 67-68.)

{¶ 48} The divorce decree clearly set forth the requirement that appellant transfer one-half of his Chase Roth individual retirement account, as well as $374,404 from his Chase retirement plan, to appellee. The order also designated the entity to prepare the qualified domestic relations order and set forth the basic terms to be included in that order. Appellant did not deny having knowledge of the requirement that these retirement benefits were to be transferred to appellee. Moreover, we note appellant was represented by counsel whom he could have asked to pursue the necessary documentation to comply with the divorce decree. To the extent appellant's argument could be construed to claim impossibility of performance due to failure of the third-party entity to prepare the

necessary documents, appellant failed to show that any such impossibility was not due to his own failure to contact or have his counsel contact that entity regarding the transfer. The evidence presented at the contempt hearing established the existence of this requirement under the court's order and that appellant was aware of the requirement and had failed to comply. The trial court did not abuse its discretion by holding appellant in contempt for failure to comply with the retirement benefit transfer portions of the divorce decree.

{¶ 49} Accordingly, we overrule appellant's tenth assignment of error.

{¶ 50} In his eleventh assignment of error, appellant argues the trial court erred by ordering him to pay an additional $5,000 in attorney fees related to the contempt motion. Pursuant to R.C. 3105.73(B), a trial court may award attorney fees in a post-decree motion or proceeding arising out of a divorce action if the court finds the award equitable. "In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets." An award of attorney fees related to a post-decree motion or proceeding will not be overturned absent an abuse of discretion. *Roubanes v. Roubanes*, 10th Dist. No. 14AP-183, 2014-Ohio-5163, ¶ 6.

{¶ 51} Appellant effectively reiterates his prior arguments in support of his eleventh assignment of error, asserting that it was inappropriate for the trial court to award appellee an additional $5,000 in attorney fees when she had already been awarded $15,000 in attorney fees under the divorce decree. Appellant claims the trial court should have considered this as another relevant factor in ruling on appellee's request for attorney fees. In the judgment awarding attorney fees, the trial court found that appellee had incurred post-decree attorney expenses of nearly $10,000, but noted that some of those fees were attributable to matters other than the contempt motion. The court concluded that appellee's attorney fees were reasonable, having considered the factors set forth in Prof.Cond.R. 1.5, including the experience of appellee's attorney and whether the hourly rate charged was comparable with that for similar legal services. The court also found that appellant's income far exceeded appellee's income, even after factoring in spousal support and child support obligations. Further, the court found that appellant had demonstrated consistent disregard for the court's orders and concluded that his conduct

would likely cause appellee to accrue additional attorney fees.  Based on the analysis set forth in the trial court's judgment awarding appellee attorney fees related to the contempt proceedings, we cannot conclude that the trial court's decision was unreasonable, arbitrary or unconscionable.

{¶ 52}  Accordingly, we overrule appellant's eleventh assignment of error.

## IV.  Conclusion

{¶ 53}  For the foregoing reasons, we overrule appellant's first, second, fourth, fifth, sixth, seventh, eighth, ninth, tenth, and eleventh assignments of error, render moot appellant's third assignment of error, and affirm the judgments of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgments affirmed.*

SADLER and BRUNNER, JJ., concur.

———————————