[Cite as *Fernando v. Fernando*, 2017-Ohio-9323.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Champa Fernando, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 16AP-788 |
| v. | : | (C.P.C. No. 15DR-450) |
| Shanaka J. Fernando, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 29, 2017

**On brief:** *Petroff Law Offices, LLC, Ronald R. Petroff,* and *Michelle J. Askins,* for appellee.

**On brief:** *Atkins and Atkins Attorneys at Law, Jacqueline Baumann,* and *Arianna Atkins,* for appellant.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations

DORRIAN, J.

{¶ 1} Defendant-appellant, Shanaka J. Fernando, appeals the October 19, 2016 judgment entry and final decree of divorce entered by the Franklin County Court of Common Pleas, Division of Domestic Relations. For the following reasons, we affirm in part and reverse in part.

I. Facts and Procedural History

{¶ 2} Appellant and plaintiff-appellee, Champa Fernando, were married on January 6, 1996, and three children were born as issue of the marriage. On February 10, 2015, appellee filed a complaint for divorce. On January 22, 2016, the parties submitted an agreed entry settling their personal property issues. On March 4, 2016, the parties submitted and the trial court accepted a document containing agreed joint stipulations

and a divorce settlement memorandum. As relevant to the present appeal, the parties stipulated that, in addition to the marital residence located in Dublin, Ohio, they were joint owners of five properties located in Sri Lanka: one located in Seeduwa ("the Seeduwa property"), three located in Bollatha ("the Bollatha properties"), and one located in Colombo ("the Colombo property"). The parties stipulated appellee would retain the marital residence and appellant would be entitled to a share of the equity of the marital residence, as determined by the court. The parties also entered stipulations regarding their automobiles, spousal support, life insurance, retirement accounts, financial accounts, and custody of their children.

{¶ 3} A hearing was conducted in early March 2016, with the final day of the hearing occurring on March 15, 2016. Following the hearing, on October 19, 2016, the trial court entered a judgment granting a final decree of divorce. With respect to the Sri Lankan properties, the divorce decree provided appellant would retain the Seeduwa property and the Bollatha properties. The decree further provided that the land portion of the Colombo property was appellee's separate property, and appellee would retain it. The court held the building located on the Colombo property was marital property, and each of the parties was entitled to one-half of the equity in that structure. The trial court also held appellee was entitled to half of the profits from the sale of another Sri Lankan property ("the Ja-Ela property") the parties previously owned, which appellant sold in 2013. The decree further provided for division of the parties' automobiles and other assets and accounts, and for custody of the children.

## II. Assignments of Error

{¶ 4} Appellant appeals and assigns the following six assignments of error for our review:

> [I.] The lower court in its Judgment Entry Decree of Divorce erred and abused its discretion by determining the parties' de facto termination of marriage date was after the date of the final hearing.
>
> [II.] The lower court in its Judgment Entry Decree of Divorce erred and abused its discretion by failing to make an equitable division of martial property when it excluded the value of the cars in the property division.

[III.] The lower court in its Judgment Entry Decree of Divorce erred and abused its discretion by failing to make an equitable division of martial property when the court chose an arbitrary amount in determining the value of the Colombo property.

[IV.] The lower court in its Judgment Entry Decree of Divorce erred and abused its discretion in determining the amount of rental income received by Appellee for purposes of property division.

[V.] The lower court in its Judgment Entry Decree of Divorce erred and abused its discretion in including the proceeds of the Ja-Ela property in the division of property which resulted in an inequitable division of property.

[VI.] The lower court in its Judgment Entry Decree of Divorce erred and abused its discretion in determining that the land located on the Colombo property was Appellee's separate property.

## III. Discussion

### A. Duration of the Marriage for Property Valuation

{¶ 5}   In his first assignment of error, appellant asserts the trial court abused its discretion by holding that the parties' marriage terminated as of the date of the final judgment entry rather than the date of the final hearing.  Appellant argues the trial court effectively found a de facto termination date that was contrary to the statutory presumption for when a marriage terminates for purposes of property valuation and the facts in this case.

{¶ 6}   "Because the value of an asset may change over time, the court must select a date as of which to value marital assets." *Rossi v. Rossi*, 8th Dist. No. 100133, 2014-Ohio-1832, ¶ 29. *See also Heyman v. Heyman*, 10th Dist. No. 05AP-475, 2006-Ohio-1345, ¶ 31 ("The first step in making an equitable distribution of marital property is to determine the duration of the marriage.").  R.C. 3105.171(A)(2)(a) creates a presumption that the term of a marriage for purposes of property valuation is the time from the date of the marriage through the date of the final hearing in an action for divorce.  *Meeks v. Meeks*, 10th Dist. No. 05AP-315, 2006-Ohio-642, ¶ 50.  If the court determines use of that date would be inequitable, however, it may select a termination date that it considers equitable.  R.C. 3105.171(A)(2)(b). "[A] trial court may use a de facto termination of marriage date when

the evidence clearly and bilaterally shows that it is appropriate based upon the totality of the circumstances." *Meeks* at ¶ 50. The court has discretion whether to use the final hearing date or a de facto termination date and this decision is subject to review for abuse of discretion. *Id.*

{¶ 7} An abuse of discretion occurs when a trial court's decision is "unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "A decision is unreasonable if there is no sound reasoning process that would support the decision." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard. *Porter, Wright, Morris & Arthur, LLP v. Frutta Del Mondo, Ltd.*, 10th Dist. No. 08AP-69, 2008-Ohio-3567, ¶ 11. An unconscionable decision may be defined as one that affronts the sense of justice, decency, or reasonableness. *Id.*

{¶ 8} The final hearing in this case occurred on March 15, 2016. The trial court entered its final judgment granting the divorce on October 19, 2016. In the divorce decree, the court found the duration of the marriage was from January 6, 1996 until the date of filing of the divorce decree—i.e., October 19, 2016. The trial court did not declare any alternative termination date or duration of the marriage for purposes of property valuation. Thus, in effect, the court held that the duration of the marriage for purposes of property valuation and distribution was from January 6, 1996 until October 19, 2016. *See Pierron v. Pierron*, 4th Dist. No. 07CA3153, 2008-Ohio-1286, ¶ 1 ("Where a decree is silent about the date of distribution, the date the marriage terminates controls that issue.").

{¶ 9} The majority of the property valuation and distribution issues presented in this case were not impacted by the trial court's determination of the marriage termination date. As discussed below, the trial court made its valuation and division of real property based on appraisals and evidence presented at trial. The parties stipulated to the values of their automobiles and the court found the parties had no joint financial accounts. The divorce decree provided each party would retain his or her respective life insurance policy, thus there was no need to determine a date for dividing the value of those policies. Similarly, the court found neither party owned any stocks, bonds, or mutual funds, so

there was no need to determine an appropriate valuation date for distribution of those assets. However, the court found the parties' retirement accounts were marital property and ordered them to be equally divided. The trial court did not provide a specific date for valuation of those retirement accounts; therefore, the order effectively provided that they were to be divided equally based on the value as of the date of the final judgment entry. *See Pierron* at ¶ 1. Accordingly, we must consider whether the trial court abused its discretion by effectively holding that the termination date of the marriage for purposes of property valuation was the date of the final judgment entry, rather than the date of the final hearing.

{¶ 10} As explained above, there is a statutory presumption that, for the purposes of property valuation, a marriage terminates as of the date of the final hearing, but a trial court may find a de facto termination date if using the date of the final hearing would be inequitable. Generally, a trial court may find a de facto termination date of a marriage at some point *prior to* the final hearing on the divorce petition, based on the facts and circumstances in the case. *See Meeks* at ¶ 50 ("Although there may be a de facto termination of the marriage prior to the date of the final divorce hearing, such termination must be clear and bilateral, not unilateral. Generally, trial courts use a de facto termination of marriage date when the parties separate, make no attempt at reconciliation, and continually maintain separate residences, separate business activities, and separate bank accounts."); *Mantle v. Sterry*, 10th Dist. No. 02AP-286, 2003-Ohio-6058, ¶ 13 ("The applicable case law [regarding determination of a de facto termination date] simply requires the trial court to consider all facts relevant to the issue of whether the parties' marriage was irretrievably broken at some point in time prior to the final hearing date."). Factors to be considered in determining whether to declare a de facto termination date include "whether the parties made a clear and bilateral decision to separate, whether the marriage was irretrievably broken at the time of separation, whether the separation was friendly, whether the parties engaged in sexual relations after the date of separation, whether either party had begun to cohabitate with another following separation, and whether the parties maintained separate financial arrangements." *Heyman* at ¶ 33. The parties' agreed joint stipulations provided, in relevant part, that they were incompatible and had lived separate and apart for over one

year without interruption and without cohabitation as of that date. These stipulations suggest the parties had made a clear and bilateral decision to separate and that the marriage was irretrievably broken at the time of the hearing in March 2016, if not earlier. The trial court's decision did not contain any discussion or analysis of the de facto termination date factors.

{¶ 11} Additionally, as appellant notes on appeal, use of the date of the judgment entry as the marriage termination date for property valuation may create problems in equitably dividing marital property because the evidence presented at a hearing relates to the value of the property as of that time, not as of the eventual date of a final judgment entry. *See Rossi* at ¶ 30 (holding trial court did not abuse its discretion by failing to apply the date of final judgment entry as the termination date of the marriage and stating that "use of the date of final judgment as the marriage termination date in valuing and distributing marital property would be virtually unworkable").

{¶ 12} The trial court failed to specify a marriage termination date for purposes of property valuation, thereby effectively holding that the marriage terminated for purposes of property valuation as of the date of the final judgment entry. The trial court did not address the statutory presumption contained in R.C. 3105.171(A)(2)(a) or any equitable factors that might make an alternative date appropriate. Thus, the decision failed to set forth any reasoning process or determining principle to support the court's rejection of the statutory presumption and effective use of an alternate marriage termination date for purposes of property valuation.

{¶ 13} Accordingly, we sustain appellant's first assignment of error.

### B. Issues Related to the Colombo Property

{¶ 14} Next, we turn to appellant's third, fourth, and sixth assignments of error, which relate to the Colombo property.

{¶ 15} In his sixth assignment of error, appellant argues the trial court erred by concluding that the land portion of the Colombo property was appellee's separate property.

{¶ 16} The Colombo property consisted of a plot of land, given by appellee's father in 2001 ("the Colombo land") and a multi-story, multi-unit building that was completed in 2010 ("the Colombo building"). Both appellant and appellee testified the Colombo

building was constructed using marital funds. The trial court concluded the Colombo building was marital property, and neither party disputes that finding on appeal. The trial court further concluded the Colombo land was appellee's separate property. Appellant argues the trial court erred in reaching this conclusion.

{¶ 17} In divorce proceedings, the court is required to determine what constitutes marital property and what constitutes separate property. R.C. 3105.171(B). Marital property does not include separate property. R.C. 3105.171(A)(3)(b). Separate property is defined by statute, in relevant part, as "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii). The statute further provides that the commingling of separate property with any other type of property does not destroy its identity, unless the separate property is not traceable. R.C. 3105.171(A)(6)(b). When the parties contest whether an asset is marital or separate property, it is presumed to be marital property unless proven otherwise. *Wolf-Sabatino v. Sabatino*, 10th Dist. No. 10AP-1161, 2011-Ohio-6819, ¶ 11. The party requesting that an asset be classified as separate property bears the burden of tracing it to his or her separate property. *Id.* We review a trial court's determination of property as marital or separate under a manifest weight standard, and will affirm a trial court's determination if it is supported by some competent, credible evidence. *Roush v. Roush*, 10th Dist. No. 15AP-1071, 2017-Ohio-840, ¶ 18, citing *Banchefsky v. Banchefsky*, 10th Dist. No. 09AP-1011, 2010-Ohio-4267, ¶ 36.

{¶ 18} Appellant testified at trial that he initially did not have a good relationship with appellee's parents, but by the time of the marriage and thereafter he was on good terms with them. He stated the Colombo land was given as a gift by appellee's father to benefit the family—i.e., appellee, appellant, and their children. Appellant testified it was his intention the couple would occupy part of the Colombo building after retiring. On appeal, appellant claims the Colombo land was intended to be a wedding gift to the couple, but that delivery of the gift was delayed until five years after the marriage because there were squatters living on the land.

{¶ 19} Appellee testified the Colombo land was a gift from her father, received in December 2001, given solely to her. She stated that her father subdivided a plot of land

and gave a portion to each of his daughters. Appellee testified that, although she and appellant had been married five years and had their first child at the time of the gift, it was intended solely to benefit her. Appellee stated she did not intend to reside on the Colombo land in retirement, and that the Colombo building was constructed to be leased to others for profit. Appellee testified the Colombo land was titled in her name alone. Appellee introduced a copy of the deed of gift from her father naming her as the recipient of the gift and an affidavit from her father, made in 2011, attesting the Colombo land was a gift to appellee and not to appellant. On cross-examination, appellee admitted the affidavit from her father was prepared around the time of a prior divorce filing, which she subsequently withdrew.

{¶ 20} Appellant argues the trial court erred by concluding the Colombo land was appellee's separate property. Appellant claims the use of marital funds to maintain the property, build the Colombo building, and pay property taxes on the Colombo land demonstrate the Colombo land was marital property. Appellant claims the fact that the Colombo land is titled in appellee's name alone is not conclusive as to whether it is marital or separate property. Appellant argues the affidavit from appellee's father should be given little weight because it was prepared in anticipation of a divorce proceeding. Appellant further argues appellee was not a credible witness because she failed to provide certain information on her financial disclosures and tax returns.

{¶ 21} Appellant also cites the decision of the Eleventh District Court of Appeals in *Stacy v. Stacy*, 11th Dist. No. 2004-A-0076, 2005-Ohio-5289, in support of his claim that the Colombo land was marital property. In *Stacy*, Ronald Stacy claimed the trial court erred by concluding that a vacant parcel of land given by his mother was marital property. *Id.* at ¶ 14. The lot was transferred by a quitclaim deed from Ronald's mother to Ronald and his then-wife Sherri. Ronald testified it was his idea to put his wife's name on the deed. Following the transfer, the property taxes on the lot were paid from marital funds. Ronald's mother testified it was her intention that the gift was solely for Ronald and that the lot was to be returned to her if the couple wanted to sell it. *Id.* at ¶ 17. The trial court concluded the lot was marital property, noting that the deed was prepared by legal counsel and that if Ronald's mother had intended it to be a gift solely to him, that could have been reflected by making the deed to Ronald alone. The court also noted the alleged

restriction on sale of the property could have been included in the deed, but was not. The trial court concluded that testimony from Ronald and his mother was a self-serving attempt to retain a valuable asset. *Id.* at ¶ 19. Noting there was conflicting testimony regarding whether the gift was intended for Ronald or for the couple, the court of appeals affirmed the trial court's ruling, finding that Ronald failed to establish by clear and convincing evidence the gift was intended solely for him. *Id.* at ¶ 20. Appellant argues the present case is analogous to *Stacy* because the property taxes on the Colombo property were paid with marital funds. Despite this similarity, there is a substantial difference in the present case, in that the deed of gift conveying the Colombo land was made solely to appellee. Thus, we are not persuaded the reasoning of the *Stacy* decision applies in the present case.

{¶ 22} The fact that appellee holds title to the Colombo land is not conclusive as to its identity as marital or separate property. R.C. 3105.171(H). *See also Wolf-Sabatino* at ¶ 66. Although the trial court referred to that fact as strengthening appellee's claim of separate property, it did not rely solely on appellee's individual ownership of the property in reaching its conclusion. The court also found the deed, the trial testimony, and the affidavit from appellee's father clearly established his intent to give the Colombo land solely to appellee. To the extent appellant challenges the credibility of appellee's testimony or the affidavit from appellee's father, those issues were raised at trial and the court was able to consider them in evaluating and weighing the evidence. "It is the place of the trial court, not the reviewing court, to assess the credibility of the witnesses." *Heyman* at ¶ 18. Under the circumstances in this case, we conclude there was competent, credible evidence to support the trial court's conclusion and, therefore, the finding that the Colombo land was appellee's separate property was not against the manifest weight of the evidence. *Compare Crowder v. Crowder*, 10th Dist. No. 98AP-1124 (Aug. 5, 1999) (holding that even if lump sum mortgage payment and monthly mortgage payments on the marital residence made by appellant's father were considered gifts, there was no evidence they were given only to the appellant); *Pettry v. Pettry*, 81 Ohio App.3d 30, 34-35 (10th Dist.1991) (holding that despite appellant's testimony that a down payment on the marital home was advanced by her parents, she failed to demonstrate the down payment was intended to be a separate gift to her, rather than a gift to the couple).

{¶ 23} Accordingly, we overrule appellant's sixth assignment of error.

{¶ 24} In his third assignment of error, appellant argues the trial court abused its discretion in determining the value of the Colombo property. As explained above, we conclude the trial court's determination that the Colombo land was appellee's separate property was not against the manifest weight of the evidence. Therefore, in considering appellant's third assignment of error, we will evaluate whether the trial court abused its discretion in determining the value of the Colombo building, which it found to be marital property.

{¶ 25} After determining what constitutes marital property and what constitutes separate property, the court is required to divide the marital and separate property equitably. R.C. 3105.171(B). With respect to marital property, R.C. 3105.171(C)(1) provides that marital property shall be divided equally, unless an equal division would be inequitable, in which case the property shall be divided in the manner the court determines equitable. The trial court must value the marital property to determine an appropriate division. *See Raymond v. Raymond*, 10th Dist. No. 11AP-363, 2011-Ohio-6173, ¶ 22 ("To comply with its duty [under R.C. 3105.171(C)(1)], the trial court must value and divide all marital property in a divorce, and in most cases, the failure to do so amounts to an abuse of discretion. Although a trial court possesses broad discretion to determine the value of marital property, it may not omit valuation altogether.") (Citations omitted.). We review a trial court's determination of the value of marital property for abuse of discretion. *Beagle v. Beagle*, 10th Dist. No. 09AP-353, 2009-Ohio-6570, ¶ 11 ("A trial court has broad discretion to determine the value of marital property, and its determination will not be disturbed on appeal absent an abuse of that discretion."); *Grody v. Grody*, 10th Dist. No. 07AP-690, 2008-Ohio-4682, ¶ 20 ("A trial court has broad discretion in developing a measure of value for property in a divorce case.").

{¶ 26} "Although a trial court enjoys broad discretion in determining the value of a marital asset, such discretion is not without limit. An appellate court's duty is not to require the adoption of any particular method of valuation, but to determine whether, based upon all the relevant facts and circumstances, the court abused its discretion in arriving at a value." *Apps v. Apps*, 10th Dist. No. 02AP-1072, 2003-Ohio-7154, ¶ 38. "A trial court must have a rational evidentiary basis for assigning value to marital property."

*Id. See also Dach v. Homewood*, 10th Dist. No. 14AP-502, 2015-Ohio-4191, ¶ 36 ("[A] domestic court has broad discretion to make divisions of property and if there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion.").

{¶ 27} At trial, three sets of appraisals of the Sri Lankan properties, including the Colombo property, were admitted as evidence. Appellant submitted appraisals conducted in 2011 and a second set of appraisals conducted in 2015. Appellee submitted appraisals conducted on March 10, 2016. Although the parties had stipulated to the admission of appraisal reports on the Sri Lankan properties, appellant objected to appellee's March 10, 2016 appraisals because they were conducted after the stipulations had been entered. The trial court overruled appellant's objection, but noted it would give the 2016 appraisals appropriate weight because the appraiser who prepared the reports was unable to testify in the proceedings.

{¶ 28} In the divorce decree, the trial court generally found "the appraisal done and introduced by Defendant to be the most accurate appraisals." (Jgmt. Entry at 5.) All the appraisals of the Sri Lankan properties stated property values in Sri Lankan rupees. The parties stipulated to a conversion rate of 134.44 Sri Lankan rupees to one United States dollar. Based on that conversion rate, the trial court's determination of the values of the four Sri Lankan properties awarded to appellant under the property settlement matched the values contained in the 2015 appraisals submitted by appellant, rounded to the closest whole dollar. With respect to the Colombo building, however, the trial court's determination of value matched the value contained in the 2011 appraisal of the Colombo property submitted by appellant. The 2011 appraisal stated the Colombo building was worth 19,687,000 rupees, which would be $146,437.07 at the stipulated conversion rate. The 2015 appraisal stated the Colombo building was worth 21,000,000 rupees, which would be $156,203.51 at the stipulated conversion rate. In the divorce decree, the trial court concluded the Colombo building was worth $146,437.07, and that appellant was entitled to one-half of that value. The trial court also appears to have relied on the 2011 appraisal in determining the value of the Colombo land and the total value of the Colombo property.

{¶ 29} As noted above, a trial court must have a rational evidentiary basis for assigning value to marital property. *Apps* at ¶ 38. The trial court's discussion of the Colombo property does not contain any indication why the court found the 2011 appraisal of that property more persuasive than the 2015 appraisal, despite relying on the 2015 appraisals in determining the value of all the other Sri Lankan properties. The trial court relied on the 2011 appraisal without explanation or justification to set the value of the Colombo building for purposes of division of the marital property. On remand, the trial court may provide a rational evidentiary basis for relying on the 2011 appraisal or consider the 2015 appraisal if it determines the same to be a rational evidentiary basis for the value of the Colombo property.

{¶ 30} Accordingly, we sustain appellant's third assignment of error.[1]

{¶ 31} In his fourth assignment of error, appellant asserts the trial court abused its discretion in determining the rental income appellee received from the Colombo building and in distributing that income between the parties. We review a trial court's division of property for abuse of discretion. *Roush* at ¶ 18.

{¶ 32} Both appellant and appellee testified at trial that the Colombo building was completed in 2010. Appellee testified the Colombo building had been consistently rented to a single family since 2010, and that she received approximately $10,000 per year in rental income from the Colombo building. Appellant testified he had not received any of the rental income from the Colombo building and he was seeking half of the approximately $60,000 appellee had received in rental income from the Colombo building during 2010 through 2016. Further, in an affidavit filed in opposition to appellant's request for attorney fees related to discovery, appellee attested she received $10,500 in rental income from the Colombo building in 2015.

{¶ 33} In the divorce decree, the trial court found appellee had received $28,333.33 in rental income from the Colombo building from August 2010 through

---

[1] In her brief on appeal, appellee requests the court sustain the third assignment of error. She appears to argue the trial court should have relied on the 2015 appraisal in determining the value of the Colombo land, but further argues the Colombo building was only worth 14,000,000 rupees, or $104,135.67 at the stipulated conversion rate. It is unclear where appellee derived this proposed value, because it does not appear to be contained in any of the three appraisals of the Colombo property submitted to the trial court. Regardless, to the extent appellee seeks to challenge the trial court's determination of the value of the Colombo property, she did not file a notice of appeal from the judgment and any such challenge is not properly before this court.

March 2016. The court further found no evidence had been given as to improvements or receipts for expenses. The court concluded appellant was entitled to one-half of the rental proceeds, or $14,166.67. The decision does not set forth the basis for the trial court's finding that appellee received rental income from the Colombo building that was less than half of the amount she testified to at trial. There does not appear to be any competent, credible evidence in the record to support the trial court's determination of appellee's rental income from the Colombo building.

{¶ 34} Accordingly, we sustain appellant's fourth assignment of error

### C. Exclusion of Value of Automobiles from Property Division

{¶ 35} In his second assignment of error, appellant asserts the trial court abused its discretion by failing to include the value of two of the parties' automobiles in the property settlement. R.C. 3105.171(C)(1) provides that marital property shall be divided equally, unless an equal division would be inequitable, in which case the property shall be divided in the manner the court determines equitable. We review a trial court's division of marital property for abuse of discretion. *Lorey v. Lorey*, 10th Dist. No. 16AP-14, 2016-Ohio-5949, ¶ 14.

{¶ 36} In the divorce decree, the trial court held that appellee would retain, free and clear from any claim of appellant, a 2012 Honda Odyssey that was titled jointly in the parties' names. The trial court also held that appellant would retain, free and clear from any claim of appellee, a 2011 Honda Civic and a 2012 Honda Civic, one of which was titled jointly in the parties' names and one of which was titled in appellant's name. The trial court further expressly held that appellant would not be entitled to any equity in the 2012 Honda Odyssey. Although the trial court did not expressly hold that appellee was not entitled to any equity in the two vehicles retained by appellant, it effectively reached this result by not providing for any transfer or offset of equity in the vehicles in the property settlement portion of the divorce decree.

{¶ 37} Appellant argues the trial court abused its discretion because its decision was inconsistent with the parties' agreed joint stipulations and settlement memorandum. Under the joint stipulations, the parties agreed appellant would be entitled to retain all equity in the 2012 Honda Civic. The joint stipulations did not include any express provisions with respect to any equity in the 2012 Honda Odyssey or the 2011 Honda Civic,

although it contained stipulations regarding the value of those vehicles.  Appellant argues on appeal that "[t]he intent of the parties seems clear that by mentioning the values of the other two vehicles in the Settlement Memorandum but not the 2012 Honda Civic the parties intended for the lower court to distribute their values in the division of property." (Appellant's Brief at 22-23.)  However, if this was the intent of the parties, they could have made it clear by stating in the settlement memorandum that each party would receive one-half the equity in those two vehicles.  Under these circumstances, where the parties did not expressly provide in the agreed joint stipulations whether the equity in the 2012 Honda Odyssey and 2011 Honda Civic was to be divided among the parties, we cannot conclude the trial court abused its discretion by effectively permitting each party to retain the equity in the vehicles they were awarded under the divorce decree.

{¶ 38} Accordingly, we overrule appellant's second assignment of error.

### D. Proceeds of Sale of Ja-Ela Property

{¶ 39} In his fifth assignment of error, appellant claims the trial court abused its discretion by holding appellee was entitled to one-half of the proceeds of the Ja-Ela property sale.  Appellant argues the trial court failed to consider the totality of the circumstances surrounding the proceeds of this sale and each party's use of marital funds to start individual businesses around the time of the sale.

{¶ 40} The trial court concluded appellant sold the Ja-Ela property in 2013 for a profit of $34,960, and that appellee never received her half of the profits.  The trial court included a payment of $17,480 to appellee in the property settlement to account for one-half of the profits from the Ja-Ela property sale.

{¶ 41} Appellant asserts he used the profits from the Ja-Ela property sale to start a chicken farming business, which ultimately failed, resulting in a financial loss.  Appellant claims that around the same time, appellee used marital funds to start a business, which also ultimately resulted in a loss of funds.  Appellant argues the trial court's award was inequitable because it failed to consider appellee's loss of marital funds through her business venture, which effectively offset appellant's use of the Ja-Ela profits for his business.

{¶ 42} Appellee testified at trial that the Ja-Ela property had been purchased in 2003, using funds from a home equity line on the marital residence.  Appellee stated

appellant sold the Ja-Ela property in 2013 and informed her he was using the money to start a business in Sri Lanka. Appellee testified that none of the proceeds were used to pay marital expenses. She requested the court award her one-half of the proceeds from the Ja-Ela sale. On cross-examination, appellee admitted she opened a business around the same time, using funds from her paychecks. Appellant testified that he used the proceeds from the sale of the Ja-Ela property to start a chicken farming business. He claimed appellee was generally aware he was starting a business, although she was not aware of specific details. Appellant stated the business failed due to a flood, resulting in a financial loss. Appellant argued appellee was not entitled to any of the proceeds from the Ja-Ela sale, which he used to fund his individual business, because appellee had incurred similar losses from her business venture using marital funds.

{¶ 43} It is undisputed that the Ja-Ela property was marital property and that appellant unilaterally sold the property and used the proceeds to fund a business venture. While the divorce decree did not expressly address appellant's claim that appellee was not entitled to one-half the proceeds from the sale due to her use of marital funds for other business ventures, the transcript demonstrates the trial court was aware of this argument and could consider it in determining an equitable property settlement. Under these circumstances, we conclude appellant has failed to demonstrate the trial court acted arbitrarily, unreasonably, or unconscionably in awarding appellee one-half of the proceeds of the Ja-Ela property sale. Thus, the trial court did not abuse its discretion in making this award.

{¶ 44} Accordingly, we overrule appellant's fifth assignment of error.

## IV. Conclusion

{¶ 45} For the foregoing reasons, we sustain appellant's first, third, and fourth assignments of error, and overrule appellant's second, fifth, and sixth assignments of error. We affirm in part and reverse in part the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and remand the matter to that court for further proceedings consistent with law and this decision.

*Judgment affirmed in part and reversed in part; cause remanded.*

BRUNNER and HORTON, JJ., concur.

---