[Cite as *Sykes v. Sykes*, 2024-Ohio-1042.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ryan C. Sykes, | : | |
| Plaintiff-Appellee, | : | No. 23AP-295 |
| v. | : | (C.P.C. No. 21DR-3233) |
| Sarah Sykes, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 21, 2024

**On brief:** *Grossman Law Offices*, and *John H. Cousins, IV*, for appellee. **Argued:** *John H. Cousins, IV*.

**On brief:** *Woodford Sathappan McGee, Co., LPA*, and *Hari K. Sathappan*, for appellant. **Argued:** *Hari K. Sathappan*.

APPEAL from the Franklin County Court of Common Pleas, Division of Domestic Relations

LELAND, J.

{¶ 1} This is an appeal by defendant-appellant, Sarah Sykes, from a judgment entry and final decree of divorce entered by the Franklin County Court of Common Pleas, Division of Domestic Relations.

**I. Facts and Procedural History**

{¶ 2} On September 15, 2021, plaintiff-appellee, Ryan C. Sykes, filed a complaint for divorce against appellant. The complaint alleged that the parties were married on April 8, 2006, and one minor child was born as issue from the marriage.

{¶ 3} On February 18, 2022, a magistrate of the trial court issued temporary orders noting the parties had reached a partial agreement regarding custody and parenting time, and that the remaining issues involved financial matters. The parties subsequently issued pre-trial statements.

{¶ 4} On February 14, 2023, the trial court conducted a trial on the matter. On April 20, 2023, the court filed a judgment entry in which it granted the parties a divorce and valued and divided the marital assets, including the marital residence. As relevant to the issues presented on appeal, the trial court noted in its findings of fact that "[t]he parties are joint owners of one (1) parcel of real estate located [on] Alton Darby Creek Road, Hilliard," which was "purchased during the marriage on November 19, 2014, for $273,452.00." (Jgmt. Entry/Decree of Divorce at 9.)  For the year 2022, "the Franklin County Auditor valued the marital residence at $285,900.00." (Jgmt. Entry at 9.)  On January 20, 2023, an appraisal of the property was made by Brian Long, a witness on behalf of appellant, who "was stipulated as an expert witness by both parties at contested trial." (Jgmt. Entry at 9.)  Long appraised the marital residence "for $535,000.00." (Jgmt. Entry at 9.)

{¶ 5} The trial court determined "the marital property shall be valued at $440,000 to reflect the current real estate market." (Jgmt. Entry at 9.)  The court awarded the marital residence to appellee, ordering him to "refinance the current loan on said real property or obtain an additional loan to satisfy the equity provisions." (Jgmt. Entry at 27.)  The court further held that "[t]he equity in the real property subject to equitable division is $182,428," and the parties "shall equally (50-50) divide and receive the equity in the residence." (Jgmt. Entry at 28.)

## II. Assignments of Error

{¶ 6} Appellant appeals and assigns the following two assignments of error for our review:

> [I.] The trial court erred to the material prejudice of Defendant in finding that [the residence] should be valued at $440,000 to reflect the current real estate market.
>
> [II.] The trial court erred to the material prejudice of Defendant in ordering that the marital equity in [the residence] subject to division is $182,428.00.

## III. Analysis

{¶ 7} Appellant's assignments of error are interrelated and will be considered together. Under these assignments of error, appellant challenges the trial court's valuation

of the marital residence, asserting the court assigned a "middle of the road" value to the real estate without a proper evidential predicate. (Appellant's Brief at 3.) Based on her assertion the trial court erred in valuing the property, appellant further argues the court's calculation of the marital equity in the residence was in error.

{¶ 8} In a divorce proceeding, a trial court "is required to determine what constitutes marital property and what constitutes separate property." *Vacheresse v. Paulchel*, 10th Dist. No. 22AP-583, 2023-Ohio-3226, ¶ 13, citing R.C. 3105.171(B). In "making such determinations, the trial court must divide the marital and separate property equitably, between the spouses, in accordance with R.C. 3105.171." *Id.*, citing R.C. 3105.171(B). In deciding on an appropriate division, "the trial court must value the marital property." *Id.* at ¶ 14. In general, "[a] domestic relations court enjoys broad discretion in valuing and fashioning a division of marital property." *Id.* at ¶ 15. In allocating marital property, a trial court "must indicate the basis for its award in sufficient detail to enable an appellate court to determine whether the award is fair, equitable, and in accordance with the law." *Hood v. Hood*, 10th Dist. No. 09AP-764, 2010-Ohio-3618, ¶ 20, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 97 (1988), *superseded by statute on other grounds*. A reviewing court "will uphold a trial court's valuation and division of property absent an abuse of discretion." *Kowalkowski-Tippett v. Tippett*, 10th Dist. No. 20AP-228, 2021-Ohio-4220, ¶ 34, citing *Hood* at ¶ 13.

{¶ 9} In a similar vein, "a trial court generally has broad discretion to develop some measure of value." *Vacheresse* at ¶ 21. Even though " ' "a trial court enjoys broad discretion in determining the value of a marital asset, such discretion is not without limit." ' " *Id.* at ¶ 22, quoting *Fernando v. Fernando*, 10th Dist. No. 16AP-788, 2017-Ohio-9323, ¶ 26, quoting *Apps v. Apps*, 10th Dist. No. 02AP-1072, 2003-Ohio-7154, ¶ 38. In this respect, " '[a] trial court's assignment of an asset's value must be based upon competent, credible evidence,' meaning 'evidence that is both competent, credible evidence of value and a rational basis upon which to establish the value.' " *Id.*, quoting *Warren v. Warren*, 10th Dist. No. 09AP-101, 2009-Ohio-6567, ¶ 15. Thus, " '[a] trial court must have a rational evidentiary basis for assigning value to marital property.' " *Id.*, quoting *Fernando* at ¶ 26. Where expert testimony is admitted "as to property values, the court may believe all, part,

or none of the expert's testimony." *Miller v. Miller*, 10th Dist. No. 23AP-319, 2024-Ohio-821, ¶ 18, citing *Beagle v. Beagle*, 10th Dist. No. 09AP-353, 2009-Ohio-6570, ¶ 12, citing *Boyles v. Boyles*, 11th Dist. No. 2000-P-0072 (Oct. 5, 2001). Finally, " ' "[a]n appellate court's duty is not to require the adoption of any particular method of valuation, but to determine whether, based upon all the relevant facts and circumstances, the court abused its discretion in arriving at a value." ' " *Vacheresse* at ¶ 23, quoting *Fernando* at ¶ 26, quoting *Apps* at ¶ 38.

{¶ 10} In the present case, the parties presented the following testimony and evidence at trial with respect to the value of the marital residence. Brian Long, a "certified residential real estate appraiser," testified on behalf of appellant. (Tr. Vol. 1 at 19.) Long was "contacted" by appellant "to provide a current appraisal on the subject property," located on Alton Darby Creek Road. (Tr. Vol. 1 at 20.) Long conducted an appraisal on January 20, 2023, and prepared a residential appraisal report; that report was admitted at trial as defendant's exhibit D.

{¶ 11} Long testified he appraised the value of the property at $535,000 based on a "sales comparison approach." (Tr. Vol. 1 at 21.) In performing that appraisal, Long used four comparable residential sales and his report "spelled out how each comp was weigh[ed]." (Tr. Vol. 1 at 21.) Outlining the steps involved in his appraisal, Long stated he first "inspect[ed] the subject property" to "determine the square footage, room count, general conditions." (Tr. Vol. 1 at 22.) He then "pull[ed] the comparable sales in the area." (Tr. Vol. 1 at 22.) According to Long, "[a]ll of the comparable sales are located within the marketplace and the Hilliard School District." (Tr. Vol. 1 at 22.) Long "put those comparable sales onto a grid and adjust[ed] to either negative or positive for differences between that sale and the subject property." (Tr. Vol. 1 at 22.) After obtaining a "value range," he then "weigh[ed] the comps and [came] up with the value of $535,000." (Tr. Vol. 1 at 22.) Long described the subject residence as a "straightforward property," stating "[i]t wasn't unique in any way, not excessive acreage or square footage." (Tr. Vol. 1 at 23.) On cross-examination, he stated three of the comparable sale properties were located between 1.84 and 3.54 miles of the marital residence, and the fourth property was located "just under a mile" from the subject property. (Tr. Vol. 1 at 27.)

{¶ 12} Appellee testified on his own behalf, stating he had resided at the marital residence since November 2014. At trial, appellee identified plaintiff's exhibit No. 2 as a copy of the "Franklin County Auditor's website for our home." (Tr. Vol. 1 at 71.) The auditor's 2022 appraised value of the residence was $285,900. Appellee testified he was requesting the court to award him the marital residence and to value the property based on the Franklin County Auditor's 2022 tax valuation. Appellee related that, during the marriage in 2019, appellant had challenged the auditor's valuation and assessment of the marital residence.

{¶ 13} When questioned on direct examination, appellee testified he would not sell the residence for $200,000, nor would he sell it for $250,000, stating that $285,900 would be close to what he would consider as a selling price for the property. Appellee did not wish to sell the residence at this time because the house was important to his son who "does not want to move." (Tr. Vol. 1 at 73.)

{¶ 14} On cross-examination, appellee acknowledged he and appellant purchased the marital residence for the amount of $273,452 on November 19, 2014. Appellee stated he would be willing to sell it for $285,900 "[i]f I had to," and he believed that amount constituted a fair current price. (Tr. Vol. 1 at 104.)

{¶ 15} Appellant testified on her own behalf. In May 2022, appellant moved to Florida, where she is currently employed as a "senior property manager." (Tr. Vol. 2 at 229.) Appellant testified she wanted the court to value the marital residence at the amount determined by her appraiser (Long), further stating she would not have accepted an offer to sell the house for $285,000. On cross-examination, appellant acknowledged she challenged the auditor's tax appraisal of the marital residence in September 2020. According to appellant, she was not "arguing for any specific value, just the lowest as possible * * * for tax purposes." (Tr. Vol. 2 at 255.)

{¶ 16} As noted, appellant asserts on appeal the trial court erred in picking a "middle of the road" estimate between the two values presented by the parties. In support, appellant relies in part on *Rodriguez v. Rodriguez*, 11th Dist. No. 89-G-1498 (Apr. 13, 1990). Under the facts of that case, the parties were granted a divorce and the primary issue on appeal involved the trial court's valuation of the appellant's business. At trial, the appellee

presented the testimony of an expert who valued the business at $280,586, while the appellant's expert valued it at $51,257. The trial court "concluded that the business was worth $125,000, and awarded it to [the] appellant." *Id.*

{¶ 17} On appeal, the appellant asserted the evidence did not support a valuation of $125,000; the reviewing court agreed, noting that "in obtaining a valuation, the judge or trier of fact must have before it sufficient evidence to justify or support the dollar figure it obtains." *Id.* Specifically, the court held: "[I]f the trial court summarily arrives at a valuation of * * * property, even though between the two extremes of the opposing parties' witnesses, without a proper evidential predicate, such would be error. * * * To achieve a middle of the road estimation without some basis for such an adjustment from one extreme or the other would constitute error as not being supported by the evidence." *Id.*

{¶ 18} In addressing the record evidence before it, the court in *Rodriguez* concluded that, where "[the] appellant's expert valued the business at $51,257," and the appellee's expert "indicated it was worth $280,586," the "remaining testimony [was] insufficient to support a finding of $125,000" as "[n]either party presented evidence which would either increase the value by approximately $75,000 or decrease the value by $155,000." *Id.* Finally, the court observed, the trial court "failed to explain how it obtained the value it did," and therefore "the court's conclusion is not supported by any evidence which would permit a valuation of $125,000." *Id.*

{¶ 19} Appellant argues that numerous Ohio appellate courts have rendered holdings similar to *Rodriguez,* including the following cases she cites in support: *Farmer v. Farmer*, 1st Dist. No. C-950846 (Oct. 9, 1996) (finding trial court "was not free to choose a value between the two extremes" where record "only contained evidentiary support for the zero value and the $ 150,000 value" provided by the two experts); *Morgan v. Morgan*, 2d Dist. No. 27164, 2017-Ohio-402, ¶ 20, quoting *Carter v. Carter*, 2d Dist. No. 2008 CA 54, 2009-Ohio-3637, ¶ 17 (noting "trial court errs and abuses its discretion if it 'summarily arrives at a valuation of an asset or property, even though between two extremes of the opposing parties' witnesses, without a proper evidential predicate' "); *Long v. Long*, 6th Dist. No. L-96-240 (Aug. 8, 1997) (where one party valued business at $1 million and another valued it at only $100, basis of trial court's valuation at $20,000 "not sufficiently

detailed to enable this court to determine that it is not unreasonable, arbitrary, or unconscionable"); *Martin v. Martin*, 8th Dist. No. 79219 (Dec. 20, 2001) (where plaintiff testified that value of home furnishings was $30,000, trial court's valuation of furnishings at $2,500, where it "did not explain how or why it arrived at the $2,500 figure," not supported by credible evidence); *Corrigan v. Corrigan*, 9th Dist. No. 3174-M (Sept. 12, 2001) (where appellee presented uncontradicted testimony as to value of property, deviation from values by magistrate and trial court without explanation leads to conclusion "the assigned value is arbitrary"); *Lamb v. Lamb*, 11th Dist. No. 2001-P-0027 (Mar. 8, 2002) (where only appraisal at hearing valued marital property at $151,000, trial court's valuation of property at $115,000, in which it "failed to explain how it assigned the value," not supported by any evidence to permit such valuation).

{¶ 20} In response, appellee argues the trial court did not merely pick a midpoint between the auditor's value of $285,900 and Long's appraisal of $535,000. Appellee maintains the trial court was free to adjust the auditor's value or to average it based on other evidence presented at trial, including the testimony of the parties and the comparable sales data set forth in Long's appraisal report.

{¶ 21} Appellee cites several cases in support, including the decision of the Second District Court of Appeals in *Carter*. Under the facts of that case, the appellee's appraiser testified the current fair market value of the marital property was $125,000, while the appellant's appraiser opined the fair market value of the property was $165,000. The trial court awarded the property to the appellee, valuing it at $145,000. On appeal, the appellant argued the trial court abused its discretion in valuing the marital property at $145,000, asserting the court "was required to use one of the valuations that the parties' separate appraisers assigned to the property and could not simply average the two opposing values." *Carter* at ¶ 14.

{¶ 22} The reviewing court found no abuse of discretion, holding "[t]he record contains evidence that supports the court's decision to reject the parties' appraisers' valuations and to instead choose a valuation in the middle." *Id*. at ¶ 21. More specifically, the court noted the appellee "testified that the property needs several repairs," including a new furnace and septic system. *Id*. The reviewing court concluded the trial court could

have determined that the appellant's appraisal (of $165,000), which "did not account for any repairs to the property," constituted "an appropriate starting point but then found that due to the nature of the repairs, the fair market value of the property should be reduced by $20,000." *Id.* In this respect, "[t]he court was not required to accept either appraisal but instead, was free to believe some, none, or all of the witnesses' testimony." *Id.*

{¶ 23} Appellee also cites *Ruble v. Ruble*, 12th Dist. No. CA2010-09-019, 2011-Ohio-3350, ¶ 66, in which the appellee testified she had reviewed information from the county auditor's website indicating that homes of comparable value to the parties' marital residence "sold for less than $90,000," while the appellant presented an appraisal report indicating the residence "was worth approximately $120,000." The trial court accepted a magistrate's finding that the residence was worth $110,000 and, on appeal, the appellant asserted the trial court erred and "should have used the valuation his third-party appraiser assigned to the property." *Id.* at ¶ 63. In *Ruble*, the reviewing court affirmed the trial court's decision, finding competent, credible evidence to support the magistrate's determination that the property had a fair market value of $110,000. More specifically, while the appellee "did not submit evidence regarding the value of the home, she indicated [the appellant's] high estimate was based upon homes far less comparable to the [marital] residence." *Id.* at ¶ 67.

{¶ 24} As noted, the trial court in the present case found "the marital property shall be valued at $440,000 to reflect the current real estate market." (Jgmt. Entry at 9.) In its decision, the court made findings that the county auditor had assessed the value of the marital residence at $285,900 for tax year 2022, and that "the marital residence privately appraised for $535,000.00" based on "[t]he appraisal * * * conducted by Brian Long," who "was stipulated as an expert witness by both parties." (Jgmt. Entry at 9.) However, aside from the above findings of the trial court, citing the conflicting valuations proffered by the parties, the basis for the trial court's valuation of the marital residence at $440,000 as reflecting "the current real estate market" is unclear, as the court offered no further findings or explanation. (Jgmt. Entry at 9.)

{¶ 25} On this point, we do not construe appellee's brief as asserting the trial court explained its reasoning in assigning a value of $440,000. Appellee suggests, however, "one

example" as to how the court could have reached a close approximation to that number; specifically, appellee argues, "the trial court could have averaged the auditor's value ($285,900) with the nearest comparable sale in Long's report ($575,000) and the most recent comparable in Long's report ($455,000) to arrive at a value of $438,633." (Appellee's Brief at 10.) Appellee further argues the evidence before the trial court included a sworn affidavit by appellant in which she opined the fair market value of the property in 2021 was $375,000.

{¶ 26} While the trial court could have reasonably relied on the comparables (or the auditor's value or the affidavit evidence) cited above in reaching its valuation, we are unable to discern, in the absence of an explanation, how the court arrived at its valuation amount. Although the trial court does not specifically reference the comparable sales data in its decision, we note that the appraisal report (defendant's Ex. D) prepared by appellee's expert (utilizing a sales comparison approach) identified four comparable property sales of $650,000 ("Comparable 1"), $575,000 ("Comparable 2"), $455,000 ("Comparable 3"), and $575,000 ("Comparable 4"), respectively and, therefore, the value assigned by the trial court to the marital property was less than the sales price of each of the comparable properties (and $15,000 less than the lowest comparable sale). Further, while the valuation assigned by the trial court ($440,000) was within the range of the two valuations proffered by the respective parties, i.e., $285,900 and $535,000, a trial court must still have "a rational evidentiary basis for assigning value to marital property." *Fernando* at ¶ 29. *See also McCoy v. McCoy*, 91 Ohio App.3d 570, 578 (8th Dist.1993) ("Even though the trier of fact is granted much leeway in obtaining a value, it must do so based upon the evidence before it," and a court may not "summarily" arrive at a valuation of property, "even though between two extremes of the opposing parties' witnesses, without a proper evidential predicate.").

{¶ 27} Again, however, because the rationale for the $440,000 valuation is not explained by the trial court, nor apparent from the record, we are unable to conduct a meaningful review as to whether there was a "rational evidentiary basis" (or "evidentiary predicate") for that value. Correspondingly, we are unable to review the "ultimate issue" as to whether the division of property was fair and equitable. *Rammel v. Rammel*, 2d Dist.

No. 14362 (Jan. 20, 1995) (trial court's failure to explain how it arrived at valuation "prevents our determination of the ultimate issue," i.e., whether the award "produced an equitable division of the marital estate").

{¶ 28} We conclude, therefore, the matter should be remanded for the trial court to articulate the basis for its valuation. *See, e.g., Banning v. Banning*, 2d Dist. No. 95 CA 79 (June 28, 1996) ("when a trial court fails to indicate the basis of its valuation," appellate court "is precluded from being able to determine whether the property division was equitable," thereby requiring remand for trial court to "explain the impetus of its valuations"); *Long* (remand required where "basis of the trial court's determination as to the value [of husband's business] is not sufficiently detailed to enable this court to determine that it is not unreasonable, arbitrary, or unconscionable"). In doing so, we make clear we do not render a determination that the trial court, in fact, abused its discretion by assigning an arbitrary valuation; rather, this matter is remanded for the limited purpose of allowing the trial court to "indicate the basis of [that] valuation." *Banning*.

{¶ 29} Accordingly, we sustain appellant's first assignment of error to the extent provided above. In light of our disposition of the first assignment of error, the issue raised under appellant's second assignment of error, in which she challenges the trial court's calculation of the marital equity in the property, i.e., a calculation dependent on the ultimate valuation of the marital residence (and the mortgage balance), is rendered moot.

## IV. Conclusion

{¶ 30} Based on the foregoing, appellant's first assignment of error is sustained to the extent provided, the second assignment of error is rendered moot, the judgment of the Franklin County Court of Common Pleas is reversed, and this matter is remanded to that court for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed*; *cause remanded*.

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____