[Cite as *Miller v. Miller*, 2026-Ohio-1148.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Myla R. Miller, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 24AP-730 |
| v. | : | (C.P.C. No. 16DR-1690) |
| Craig Miller, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 31, 2026

**On brief:** *Myla R. Miller*, pro se. **Argued:** *Myla R. Miller*.

**On brief:** *The Behal Duvall Law Group*, *Robert J. Behal*, and *DeAnna J. Duvall*, for appellant. **Argued:** *Robert J. Behal*.

APPEAL from the Franklin County Court of Common Pleas
Division of Domestic Relations

BOGGS, P.J.

{¶ 1} Defendant-appellant, Craig Miller, appeals the second amended judgment entry — decree of divorce, which the Franklin County Court of Common Pleas, Division of Domestic Relations issued following a remand from this court in *Miller v. Miller*, 2024-Ohio-821 (10th Dist.). For the following reasons, we affirm the trial court's decision.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 1} The facts and procedural history of this case are outlined and detailed in *Miller v. Miller*, 2021-Ohio-4573 (10th Dist.) ("*Miller I*"); and *Miller v. Miller,* 2024-Ohio-821 (10th Dist.) ("*Miller II*"), and will not be repeated here except as relevant to the appeals before us.

{¶ 2} Craig and plaintiff-appellee, Myla R. Miller, married on June 15, 2004. During the marriage, Craig and Myla had two children. In 2010, Craig established Eye

Columbus, L.L.C. ("Eye Columbus"), a business that provided vision care and services. Craig owned 100 percent of Eye Columbus and worked at the business as an optometrist.

{¶ 3}   On April 26, 2016, Myla filed a complaint for divorce. Craig answered the complaint and filed a counterclaim for divorce. Prior to trial, the parties had agreed upon June 30, 2016 as the de facto marriage termination date for purposes of determining the valuation of the parties' assets, including Eye Columbus. After a five-day trial, the trial court issued a judgment entry - decree of divorce on October 19, 2018.

{¶ 4}   The trial court focused on two issues: the value of Eye Columbus and the amount of Craig's income. At trial, Myla's expert witness, Courtney Sparks White, opined that the equity value of Eye Columbus on June 30, 2016 was $960,000, while Craig's expert witness, Bradford S. Eldridge, set the business's value at $220,000. In the October 19, 2018 decree, the trial court found "both parties financial valuations to Eye Columbus flawed . . . However, [Craig's] proffered valuation (i.e. $220,000) is more flawed than [Myla's] (i.e. $960,000)." (Oct. 19, 2018 Decree at 10.) The court then set the value of Eye Columbus at $960,000, and divided the marital assets and debt equally between the parties. The trial court also used Sparks White's testimony to find Craig's average income from 2015-2017 was $297,485. The court ordered Craig to pay child support in the amount of $1,140.51 per month and to pay non-modifiable spousal support in the amount of $5,500 per month for 48 months.

{¶ 5}   Craig appealed the trial court's October 19, 2018 decree to this court, arguing that the trial court abused its discretion in inequitably dividing the marital property and improperly imputing income to him. *Miller I* at ¶ 3. After reviewing the trial court's valuation of Eye Columbus and assessment of Craig's income, we concluded the court "based its determinations not on a discrete block by block evaluation of the evidence, but on a global evaluation of which of the parties' competing experts was the more credible." *Id.* at ¶ 12. However, "the ultimate task of the trial court was not simply to pick which one of two experts it favored overall, but to come to proper and properly supported results." *Id.* at ¶ 13. Once the trial court labeled Sparks White's analysis flawed, it had an obligation "to evaluate whether those unspecified flaws counseled reexamination or revision of any of the expert's bottom[-]line numbers." *Id.* at ¶ 14. Consequently, we reversed the trial court's original decree and remanded for the court to "assess the evidence and formulate its views

more precisely on what the proper allocation and appropriate and reasonable support results should be." *Id*. at ¶ 16.

{¶ 6}   On remand, the trial court held a hearing at which it accepted additional evidence.  Myla appeared at the hearing pro se, and she informed the court that she would rely on Sparks White's original unaltered expert report.  When discussing Sparks White's report, Myla mentioned the 2019 sale of Eye Columbus.  Craig's counsel objected on the grounds that the 2019 sale was irrelevant because it happened approximately two years after the June 30, 2016 de facto termination date.  The court stated it would allow Myla to "put on whatever she want[ed] to put on," and the court would give the evidence "the weight that [it] deem[ed] appropriate."  (June 14, 2022 Tr. at 10.)  Craig's counsel then made a continuing objection "to any evidence that relate[d] to what the businesses did or didn't do from June 30th, 2016, forward through today."  *Id*. at 11.

{¶ 7}   Craig introduced the report and testimony of a new expert witness: Rebekah Smith.  Smith opined that the fair market value of Eye Columbus on June 30, 2016 was $300,000—substantially less than Sparks White's $960,000 valuation.  According to Smith, "the one thing [] driving the difference" between the two valuations was Sparks White's normalization of Eye Columbus's 2016 earnings.  *Id*. at 57.  Smith opined that Sparks White "artificially inflated" Eye Columbus's 2016 performance by including $658,460 in insurance discounts in the company's revenue for 2016.  *Id*.

{¶ 8}   After the hearing at which Smith testified, Craig moved to supplement the record with additional evidence regarding the parties' incomes.  The court granted the motion and instructed the parties to supplement the record with their complete state and federal income tax returns for the period from June 30, 2016 through June 14, 2022.  Craig then filed his relevant tax returns in the record.

{¶ 9}   On May 2, 2023, the trial court issued an amended judgment entry — decree of divorce.  Before addressing the valuation and income issues, the trial court considered Craig's continuing objection, which the court characterized as an objection to "the admission of any new evidence being considered for the purposes of addressing the remand from the Court of Appeals." (May 2, 2023 Am. Jgmt. Entry — Decree of Divorce at 2.)  The trial court sustained the objection and, thus, refused to consider Smith's expert report and testimony.

{¶ 10} The trial court then reexamined Sparks White's report and testimony. The court found that Sparks White "made an erroneous math calculation" when she included the contested $658,460 discount adjustment in Eye Columbus's 2016 revenue because that adjustment was "unnecessary." *Id.* at 4-5. Nevertheless, the trial court still found "Sparks White credibly testifie[d] that, in anticipation of Defendant's objection to her 2016 financials, she conducted an alternative valuation that <u>completely excluded the contested 2016 discount adjustment</u> — and still she arrived at a value of $875,000 for Defendant's business entities." (Emphasis in original.) *Id.* The trial court then reallocated the marital assets and liabilities assigning Eye Columbus a value of $875,000.

{¶ 11} In addressing the parties' income, the trial court stated that it had before it the parties' actual income figures, rendering the experts' opinions regarding Craig's income moot. Relying on income tax returns, corporate financial records, and testimony, the trial court calculated Craig's annual income for 2015 through 2017 by deducting ordinary and necessary expenses from the gross receipts of Craig's businesses. For purposes of determining child and spousal support, the court used Craig's three-year average income, which amounted to $285,039. The court reduced Craig's child support order to $1,028.98 per month and ordered $5,500 of non-modifiable spousal support for 48 months.

{¶ 12} Craig appealed the May 2, 2023 amended decree to this court. In his appeal, Craig asserted the trial court erred by (1) failing to consider Smith's report and testimony, (2) utilizing the same expert report and testimony the court labeled as "flawed" to value Eye Columbus, and (3) refusing to reserve jurisdiction to modify the spousal support award. *Miller II*, 2024-Ohio-821, at ¶ 15 (10th Dist.).

{¶ 13} After reviewing the record, we simultaneously considered Craig's first and second assignments of error. We sustained Craig's first assignment of error by determining the trial court misunderstood Craig's continuing objection. We found that Craig did *not* object to the admission of all new evidence—he only sought to exclude evidence regarding Eye Columbus that postdated the June 30, 2016 de facto termination date. We, therefore, concluded that the court erred in excluding Smith's expert report and testimony, and we reversed and remanded the matter back to the trial court to "consider all the evidence and determine the appropriate marital value of Eye Columbus based on competent, credible

evidence in the record." *Id*. at ¶ 24. We found Craig's second assignment of error regarding the trial court's reliance on the Sparks White testimony and report to be moot. *Id*. at ¶ 25.

{¶ 14} We also sustained Craig's third assignment of error, because we did not find an explanation in the amended judgment for the trial court's refusal to reserve jurisdiction in its award for spousal support. The amended judgment entry found Craig's income to be $389,341 in 2015; $362,032 in 2016; and $154,472 in 2017. Despite finding Craig's income decreased by over $200,000, the court failed to explain how this loss of income would not impact his ability to comply with the support order. *Id*. at ¶ 33.

{¶ 15} On November 13, 2024, the trial court issued the second amended judgment entry — decree of divorce. As we directed, the court considered Smith's expert report and testimony in that judgment. The court, however, rejected Smith's opinion as to the value of Eye Columbus and found "the valuation conducted by Ms. Sparks White (as adjusted in the court's Amended Judgment Entry — Decree of Divorce filed May 2, 2023) is the more credible and probative evidence in this case." (Nov. 13, 2024 Second Am. Jgmt. Entry — Decree of Divorce at 8.) The trial court thereby continued to set the value of Eye Columbus at $875,000. The court also declined to modify its award for spousal support or reserve jurisdiction over its spousal support order.

## II. ASSIGNMENTS OF ERROR

{¶ 16} Craig now appeals the trial court's November 13, 2024 second amended judgment — decree of divorce, and he assigns the following errors:

> [1.] The Trial Court erred to the prejudice of Appellant-Husband and abused its discretion by utilizing the same expert report and testimony, that the very same Trial Court had labeled as "flawed" in the first trial in the face of the credible evidence presented of significant mathematical errors, and which was not rehabilitated in any fashion by additional or improved testimony during the remand proceedings, to arrive at an arbitrarily inflated business valuation and income conclusion, rendering the property division and support calculations inequitable.
>
> [2.] The Trial Court erred to the prejudice of Appellant-Husband and abused its discretion by issuing an award of spousal support which relied on an income calculation that included the excess earning attributable to Appellant-Husband pursuant to his business ownership, despite those excess earnings already being divided as part of the property

distribution, without considering the inequitable impact the double dip would create.

[3.] The Trial Court erred to the prejudice of Appellant-Husband and abused its discretion in awarding spousal support of a substantial amount for an extended period and making such support "non-modifiable" when the business owner/payor's income was subject to the common vicissitudes of business and potential limitations of income including his physical and mental ability to render services which could be affected at any time by injury, disease, or governmental action.

## III. ANALYSIS

### A. Assignment of Error No. 1

{¶ 17} By his first assignment of error, Craig argues that the trial court erred by utilizing the same expert report and testimony that the court considered "flawed" in the first trial, that was not rehabilitated or improved during the remand proceedings. We disagree. In assigning this error, Craig ignores this court's remand instruction whereby we advised the trial court multiple times that it was appropriate to rely on Sparks White's testimony in determining the value of Eye Columbus.

{¶ 18} In its first decree, the trial court acknowledged that Sparks White's $960,000 valuation of Eye Columbus contained a flaw. On appeal, we agreed with Craig and found that the trial court erred in adopting, without any modification, a "flawed" expert analysis. *Miller I*, 2021-Ohio-4573, at ¶ 16 (10th Dist.). We remanded the decision back to the trial court to "assess the evidence and formulate its views more precisely on what the proper allocation and appropriate and reasonable support results should be." *Id*. We further acknowledged that the trial court had "good reason" to find Sparks White's assessments more credible, and assured the trial court that it has "broad discretion to accept any or all of an expert's *testimony* in determining the proper division of marital property and setting levels of child and spousal support." (Emphasis added.) *Id*. at ¶ 13. Absent was any instruction to the trial court that it needed to take new evidence.

{¶ 19} Nonetheless, on remand the trial court held a hearing and allowed Craig to introduce a new expert, Rebekah Smith, who filed a report and provided testimony. The trial court, however, failed to consider Smith's report and testimony in determining the value of Eye Columbus. In the second appeal of this matter, we sustained Craig's first

assignment of error finding that the trial court should have considered all of the evidence, including the newly introduced testimony and report of Smith. *Miller II*, 2024-Ohio-821, at ¶ 23 (10th Dist.). We instructed that trial court that "there is no need for the trial court to accept new evidence regarding the marital value of Eye Columbus on remand." *Id.* at ¶ 24. We further explained that, "The record contains ample evidence regarding the value of this business . . . . We do not preclude the trial court from relying on any of the expert's opinions or from reaching any particular conclusion regarding the value of this marital asset. After considering all the evidence, the trial court remains free to believe all, part, or none of the expert's valuation testimony." *Id.* at ¶ 24.

{¶ 20} In both previous appeals of this matter, this court has concluded that it is appropriate for the trial court to rely on Sparks White's testimony and report to determine the value of Eye Columbus. In our first decision we explicitly stated, "We do not now hold that the trial court is barred from relying on any part of Ms. Sparks-White's testimony in determining what the equitable division of property and the correct and reasonable support levels should be." *Miller I*, at ¶ 15. Our reversal and remand in the second instance was not based on the trial court's reliance of the original Sparks White's testimony and report, but on its failure to consider Craig's newly introduced expert's report and testimony. After consistently advising the court that it could rely on Sparks White's report and testimony to determine the value of Eye Columbus, we will not now find that it was an error for the court to use this evidence.

{¶ 21} Upon determining that it was appropriate for the trial court to consider Sparks White's testimony and report as evidence, we will now consider whether the court erred in determining the value of Eye Columbus to be $875,000 and we find the court did not so err.

{¶ 22} To divide marital property, a trial court must first value that property. *Hall v. Bricker*, 2024-Ohio-1339, ¶ 25 (10th Dist.). A trial court exercises its discretion when valuing marital property. *Sykes v. Sykes*, 2024-Ohio-1042, ¶ 8 (10th Dist.). An appellate court, therefore, will only reverse a trial court's valuation of marital property if the court abuses its discretion. *Id.*

{¶ 23} Although a trial court enjoys discretion in valuing marital property, that discretion is not without limit. *Id.* at ¶ 9; *Hall* at ¶ 26. A trial court must base its

determination of a marital asset's value on competent, credible evidence, that is " 'evidence that is both competent, credible evidence of value and a rational basis upon which to establish the value.' " *Hall* at ¶ 26, quoting *Warren v. Warren*, 2009-Ohio-6567, ¶ 15 (10th Dist.); *accord Sykes* at ¶ 9 (holding the same). In other words, " '[a] trial court must have a rational evidentiary basis for assigning value to marital property.' " *Hall* at ¶ 26, quoting *Fernando v. Fernando*, 2017-Ohio-9323, ¶ 26 (10th Dist.); *accord Sykes* at ¶ 9, 26 (holding the same).

{¶ 24} In reviewing a trial court's valuation of a marital asset, an appellate court must determine whether the record contains competent, credible evidence upon which the court could base its judgment. *Vacheresse v. Paulchel*, 2023-Ohio-3226, ¶ 23 (10th Dist.). An appellate court "must uphold ' "a trial court's determination of valuation which is based upon competent, credible evidence absent a showing of an abuse of discretion." ' " *Id.*, quoting *Banchefsky v. Banchefsky*, 2010-Ohio-4267, ¶ 43 (10th Dist.), quoting *Moro v. Moro*, 68 Ohio App.3d 630, 637 (8th Dist. 1990).

{¶ 25} At issue in this case has been the hotly contested $658,460 in discounts accorded to insurance payors in 2016. In its amended judgment, the trial court explained that the flaw it perceived in the Sparks White report determining the value of Eye Columbus to be $960,000 was her erroneous math calculation in her four-year average income for Craig that utilized the discount adjustment of $658,460. (May 2, 2023 Am. Jgmt. Entry — Decree of Divorce at 4.) However, the trial court concluded that Sparks White credibly testified that in anticipation of Craig's objection to her 2016 financials she conducted an alternative valuation that completely excluded the contested 2016 adjustment and still arrived at the value of $875,000 for Eye Columbus. *Id.* at ¶ 5. By excluding the questionable $658,460 adjustment, we find the trial court's determination that the value of Eye Columbus is $875,000 was supported by competent, credible and reliable evidence.

{¶ 26} Here, the trial court has repeatedly found the testimony and report of Sparks White to be "the most accurate, unbiased, comprehensive reflection of the true market value of [Eye Columbus.]" *Id.* at 2. Having resolved the disputed $658,460 insurance discount adjustment in the 2016 earnings, the trial court again found that Sparks White's valuation was "equitable and best represents the fair market value of [Eye Columbus]." (Nov. 13, 2024 Second Am. Jgmt. Entry — Decree of Divorce at 3.) In contrast, the trial

court found that Smith relied exclusively upon Craig's testimony, as well as his business decisions and documents to assign an artificially low income that did not match his family's lifestyle and was inconsistent with US Department of Labor data. *Id*. at 6. The trial court found Sparks White's testimony "very credible" and wrote

> While [Craig] counters that Ms. Sparks White failed to inquire of him or Eye Columbus as to the *reasons* behind the drastic swings in his historical financials pre- and post-June 2016, he does not offer the Court any persuasive reasons which are not tied to operational changes he instituted *after* the commencement of this divorce proceeding.

(Emphasis in original.) (May 2, 2023 Am. Jgmt. Entry — Decree of Divorce at 3.)

{¶ 27} We note that a reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997). Because this court is not a trier of fact, our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Vacheresse* at ¶ 23, citing *Miller II*, 2024-Ohio-821, at ¶ 15 (10th Dist.). We will not substitute ourselves as fact finder and attempt to reweigh the evidence and credibility of the experts here. Accordingly, we overrule Craig's first assignment of error.

### B. Assignment of Error No. 2

{¶ 28} In his second assignment of error, Craig argues that the trial court erred in awarding spousal support based on a calculation of his income using distributions from Eye Columbus's earnings when the court had already used those distributions to value Eye Columbus. According to Craig, the court should have considered the inequitable effect of this "double dip."

{¶ 29} "Double dipping" occurs when a trial court values a marital income-producing asset based on its future income stream, awards that asset in whole or major part to the economically superior spouse, and then considers the income from that asset when determining that spouse's capacity to pay spousal support. *Gallo v. Gallo*, 2015-Ohio-982, ¶ 17 (10th Dist.). In such cases, the trial court twice "dips" into, or twice counts, a future income stream—once in valuing the marital asset and once in deciding the economically superior spouse's ability to pay spousal support. *Id*. at ¶ 36. "No outright prohibition of

double-dipping exists." *Settele v. Settele*, 2015-Ohio-3746, ¶ 28 (10th Dist.). Rather, "in the interest of equity, trial courts should factor the impact of double dipping into their property division and spousal support decisions." *Gallo* at ¶ 33.

{¶ 30} In the second amended judgment, the trial court adopted Sparks White's valuation of Eye Columbus, which she computed using the capitalization-of-earnings method.[1] That method derives a business's value from its future income stream. When dividing the marital assets, the court awarded Craig the majority share of Eye Columbus. Then, the court considered the distributions Craig received from Eye Columbus in determining Craig's income for purposes of spousal support. Therefore, the court engaged in double dipping in the amended judgment. Craig, however, did not challenge the double dip in his appeal from the amended judgment. Instead, he delayed raising the double-dip argument until this appeal, his appeal from the second amended judgment.

{¶ 31} When a party could have raised an argument on a prior appeal, res judicata dictates that it is inappropriate to consider that same argument on a second appeal following remand. *Robinson v. Bishop*, 2024-Ohio-4828, ¶ 8 (9th Dist.); *Nkurunziza v. Nyamusevya*, 2011-Ohio-6133, ¶ 13 (10th Dist.). " 'Thus, the doctrine of res judicata precludes a party who has had his day in court from seeking a second chance to litigate an issue that he could have raised earlier.' " *Nkurunziza* at ¶ 13, quoting *In re Estate of Barnett-Clardy*, 2008-Ohio-6126, ¶ 15 (10th Dist.).

{¶ 32} Because Craig could have raised the double-dip argument in his prior appeal, the doctrine of res judicata bars him from raising it in this appeal. Accordingly, we overrule Craig's second assignment of error.

### C. Assignment of Error No. 3

{¶ 33} In his third assignment of error, Craig argues that the trial court erred in failing to reserve jurisdiction over its spousal support award. We disagree.

{¶ 34} The trial court first issued the spousal support order for $5,500 per month for 48 months in the October 19, 2018 original divorce decree. Prior to the court issuing its May 2, 2023 amended judgment, which declined to modify the spousal support order, Craig supplemented the record with his complete state and federal income tax returns for the period from June 30, 2016 through June 14, 2022. The amended judgment found Craig's

---

[1] As stated above, Smith also employed the capitalization-of-earnings method to value Eye Columbus.

income to be $389,341 in 2015; $362,032 in 2016; and $154,472 in 2017, and did not modify the spousal support order despite finding Craig's income decreased by over $200,000.

{¶ 35} R.C. 3105.18(E)(1) states that a trial court "does not have jurisdiction to modify the amount or terms of the alimony or spousal support" unless the divorce decree "contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support." A trial court has discretion to determine whether to retain jurisdiction to modify an award of spousal support. *Miller II,* 2024-Ohio-821, at ¶ 29 (10th Dist.). " 'A trial court abuses its discretion in failing to reserve spousal support jurisdiction where there is a substantial likelihood that the economic conditions of either or both parties may change significantly within the period of the award.' " *Id.* at ¶ 30, quoting *Kuper v. Halbach*, 2010-Ohio-3020, ¶ 63 (10th Dist.). On the other hand, where the evidence demonstrates that the parties' incomes " 'remained relatively stable' " in the years prior to the divorce, the trial court may refuse to reserve jurisdiction over a spousal support award of limited duration. *Id.*, quoting *Kuper* at ¶ 63.

{¶ 36} We instructed the trial court to explain why it did not reserve jurisdiction to modify the spousal support order when Craig's income decreased by $200,000 between 2016 and 2017. We also empowered the trial court to "alter its reservation of jurisdiction to modify the spousal support award if necessary." *Id.* at ¶ 33. In response, the trial court explained in its second amended judgment that it did not retain jurisdiction to modify the spousal support order because (1) Craig had the ability to earn more than Myla, (2) Craig is an experienced businessman, (3) Craig had the ability to control his own income, (4) the award of spousal support was for 48 months, (5) the trial court believed Craig could meet his financial obligations, and (6) the trial court sought to provide the parties with finality.

{¶ 37} Most importantly, by the time the trial court issued its November 13, 2024 second amended judgment, it had a full and complete understanding of Craig's ability to have complied with the spousal support order issued in the original divorce decree based on his supplementing the record with his state and federal tax returns through June of 2022. Had Craig initially complied with the trial court's spousal support order, he would have fully satisfied his financial obligation to Myla by November 2022. Given the evidence the trial court had to determine Craig's ability to meet his financial obligations, we cannot

find that the trial court erred in not retaining jurisdiction over the spousal support order. Therefore, we overrule Craig's third assignment of error.

## IV.  CONCLUSION

{¶ 36}  Having overruled all of Craig's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

MENTEL, J., concurs.
JAMISION, J. dissents.

JAMISON, J., dissenting.

{¶ 37}  Because the majority decision does not accurately set forth the substance of expert witness Courtney Sparks White's testimony, I must respectfully dissent from the majority decision.  While an appellate court must defer to a trial court's discretion in determining the value of marital property, an appellate court cannot ignore deficiencies in the evidence that compromise the competency and credibility of that evidence.

{¶ 38}  In the first assignment of error, defendant-appellant, Craig Miller, contends that the trial court abused its discretion in relying on Sparks White's testimony to conclude the value of Eye Columbus, L.L.C. ("Eye Columbus") was $875,000.  I would agree.

{¶ 39}  During trial, Sparks White testified that, using the capitalization-of-earnings method, she calculated the value of Eye Columbus was $960,000—not $875,000.  To reach her valuation opinion, Sparks White testified that she "normalized" Eye Columbus's historical earnings (specifically, earnings before interest and taxes for 2013, 2014, 2015, and the first six months of 2016) by removing unusual, non-recurring, and discretionary items to better reflect the company's earning ability.  She then further adjusted the resulting figures to reach the current sustainable distributable cash flow.  Multiplying the current sustainable distributable cash flow by one plus the growth rate (3 percent) resulted in the expected sustainable distributable cash flow.  Finally, Sparks White divided the expected sustainable distributable cash flow by the capitalization rate to obtain the enterprise value of Eye Columbus.  After accounting for the interest-bearing debt and cash and cash equivalents, Sparks White arrived at her $960,000 value for Eye Columbus.  The record contains Sparks White's testimony explaining her methodology and documentary evidence supporting her $960,000 valuation for Eye Columbus.

{¶ 40} The trial court, however, rejected Sparks White's $960,000 valuation of Eye Columbus in its November 13, 2024 second amended judgment. Instead, it relied on Sparks White's $875,000 "hypothetical" valuation of Eye Columbus, an alternative valuation that Sparks White offered after she was confronted on cross-examination with an error in her original analysis. (Feb. 28, 2018 Tr. Vol. I at 149.) When determining Eye Columbus's current sustainable distributable cash flow in her original analysis, Sparks White erroneously included $658,460 in insurance discounts in the company's revenue for 2016. In an attempt to rehabilitate Sparks White, the attorney for plaintiff-appellee, Myla R. Miller, questioned Sparks White on redirect regarding any alternative valuation calculations she performed. Sparks White then opined that, using "different assumptions and facts and circumstances," the value of Eye Columbus was $875,000. (Tr. at 146.)

{¶ 41} To be clear: Sparks White unambiguously stated that her alternative analysis was "absolutely not" as simple as removing the $658,460 in insurance discounts from her original calculation. (Tr. at 145.) However, Sparks White remained vague about the changes she made in her calculations to reach the $875,000 valuation. When pressed, she stated, "I reran some numbers and I changed depreciation. I looked at different officer's compensation. I look[ed] at adjustments for advertising expenses; so there is not just one assumption that changes." (Tr. at 155.)

{¶ 42} Although a trial court enjoys discretion in valuing marital property, that discretion is not without limit. *Sykes v. Sykes*, 2024-Ohio-1042, ¶ 9 (10th Dist.); *Hall v. Bricker*, 2024-Ohio-1339, ¶ 26 (10th Dist.). A trial court must base its determination of a marital asset's value on competent, credible evidence, that is, " 'evidence that is both competent, credible evidence of value and a rational basis upon which to establish the value.' " *Hall* at ¶ 26, quoting *Warren v. Warren*, 2009-Ohio-6567, ¶ 15 (10th Dist.); *accord Sykes* at ¶ 9 (holding the same). In other words, " '[a] trial court must have a rational evidentiary basis for assigning value to marital property.' " *Hall* at ¶ 26, quoting *Fernando v. Fernando*, 2017-Ohio-9323, ¶ 26 (10th Dist.); *accord Sykes* at ¶ 9, 26 (holding the same).

{¶ 43} In reviewing a trial court's valuation of a marital asset, an appellate court must determine whether the record contains competent, credible evidence upon which the trial court could base its judgment. *Vacheresse v. Paulchel*, 2023-Ohio-3226, ¶ 23 (10th Dist.). An appellate court "must uphold ' "a trial court's determination of valuation which

is based upon competent, credible evidence absent a showing of an abuse of discretion.' ' ' " *Id.*, quoting *Banchefsky v. Banchefsky*, 2010-Ohio-4267, ¶ 43 (10th Dist.), quoting *Moro v. Moro*, 68 Ohio App.3d 630, 637 (8th Dist. 1990).

{¶ 44} Pursuant to Evid.R. 705, an expert witness "may testify in terms of opinion or inference and give the expert's reasons therefor *after disclosure of the underlying facts or data.* The disclosure may be in response to a hypothetical question or otherwise." (Emphasis added.) Therefore, according to Evid.R. 705, an expert must disclose the facts or data he or she relied on to reach their opinion. *Beattie v. McCoy*, 2018-Ohio-2535, ¶ 28 (1st Dist.); *Hartman v. Erie Ins. Co.*, 2017-Ohio-668, ¶ 62 (6th Dist.); *C.R. Withem Ents. v. Maley*, 2002-Ohio-5056, ¶ 36 (5th Dist.); *accord* 1980 Staff Notes to Evid.R. 705 ("[T]he witness is required to disclose the underlying facts or data prior to the rendition of his opinion"). "Evid.R. 705 permits the [trier of fact] to know what facts or data form the basis for the expert's opinion." *State v. Trimble*, 2009-Ohio-2961, ¶ 266. A trier of fact cannot adequately assess the validity of expert testimony without knowing the particular facts that support the expert opinion. *Lucitte v. Lucitte*, 2012-Ohio-390, ¶ 53 (6th Dist.); *Armbruster v. Hampton*, 2006-Ohio-4530, ¶ 72 (9th Dist.).

{¶ 45} Generally, " '[t]he absence of certain facts, or the failure of proof of others, goes to the weight and credibility of the testimony' " offered by the expert. *Steffy v. Blevins*, 2003-Ohio-6443, ¶ 18 (10th Dist.), quoting *Johnson v. Knipp*, 36 Ohio App.2d 218, 220 (9th Dist. 1973). Weaknesses in the factual bases of an expert's opinion undermine the weight and credibility of the expert's opinion. *Id.*; *Smith v. Norfolk S. Ry. Co.*, 2025-Ohio-3122, ¶ 84 (6th Dist.); *Wise v. Meyer*, 2006-Ohio-4654, ¶ 34 (2d Dist.).

{¶ 46} In this case, although Sparks White testified that she had performed an alternative valuation of Eye Columbus, she disclosed almost none of the facts or data underlying that valuation. Sparks White acknowledged altering multiple figures she had used in her original analysis, but she did not explicitly clarify which elements of her analysis changed or quantify how they changed. In short, Sparks White provided an opinion without fully delineating the facts or data that supported it. The lack of the necessary factual foundation for Sparks White's alternative valuation compromises both the competency and the credibility of that valuation.

{¶ 47} The majority decision simply turns a blind eye to the lack of factual foundation for Sparks White's $875,000 valuation. It concludes that Sparks White's $875,000 valuation is competent, credible, and reliable evidence because it excludes the $658,460 of insurance discounts. Sparks White, however, explicitly conceded that she had to adjust more than just the insurance discounts to arrive at the $875,000 valuation. Without evidence elucidating those adjustments, Sparks White's $875,000 valuation cannot qualify as competent, credible evidence. Accordingly, I would sustain the first assignment of error.

{¶ 48} By his third assignment of error, Craig argues that the trial court erred in failing to reserve jurisdiction over its spousal support award. I would agree.

{¶ 49} R.C. 3105.18(E)(1) states that a trial court "does not have jurisdiction to modify the amount or terms of the alimony or spousal support" unless the divorce decree "contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support." A trial court has discretion to determine whether to retain jurisdiction to modify an award of spousal support. *Miller v. Miller*, 2024-Ohio-821, ¶ 29 (10th Dist.) ("*Miller II*").

{¶ 50} " 'A trial court abuses its discretion in failing to reserve spousal support jurisdiction where there is a substantial likelihood that the economic conditions of either or both parties may change significantly within the period of the award.' " *Miller II* at ¶ 30, quoting *Kuper v. Halbach*, 2010-Ohio-3020, ¶ 63 (10th Dist.). On the other hand, where the evidence demonstrates that the parties' incomes " 'remained relatively stable' " in the years prior to the divorce, the trial court may refuse to reserve jurisdiction over a spousal support award of limited duration. *Id.*, quoting *Kuper* at ¶ 63. Additionally, a fluctuation or decline in the payor-spouse's income prior to the divorce will not necessarily obligate a trial court to retain jurisdiction over an award of limited duration, depending on the other facts and circumstances in the case. *Id.* at ¶ 32.

{¶ 51} In this case, the trial court calculated Craig's income at $367,538 for 2015, $341,758 for 2016, and $145,822 for 2017. Thus, between 2016 and 2017, Craig's income dropped almost $200,000. In the large part, the loss in income related to Craig's 2017 acquisition of two Cleveland optometry practices and the opening of an eyewear boutique in Columbus. Because these businesses lost money during their first year of operation,

Craig's income fell. Thus, the amount of Craig's income varies depending on the amount his businesses earn.

{¶ 52} The trial court stated that it did not retain jurisdiction over its award of spousal support because (1) Craig had the ability to earn more than Myla, (2) Craig is an experienced businessman, (3) Craig had the ability to control his own income, (4) the award of spousal support was for 48 months, (5) the trial court believed Craig could meet his financial obligations, and (6) the trial court sought to provide the parties with finality. None of these reasons acknowledge the instability of Craig's income. Although Craig, as a business owner, can control the amount of profits he draws from his businesses, Craig cannot treat his businesses like his own limitless pool of personal funds. Moreover, Craig has no other income or significant assets to rely on to meet his support obligations.

{¶ 53} If Craig had made the same amount of income in 2019 as he did in 2018, Craig's spousal and child support obligations would claim 53.74 percent of his income. Given that high percentage and the proven instability of Craig's income, I am not as confident as the trial court in Craig's ability to meet his future financial obligations. Accordingly, I would conclude the trial court abused its discretion in refusing to reserve jurisdiction over the spousal support award, and I would thus sustain the third assignment of error.

{¶ 54} In conclusion, I disagree with the majority decision's analysis of the first and third assignments of error. Therefore, I respectfully dissent. I would reverse the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and remand for further proceedings.

_____